COMMONWEALTH of Pennsylvania, Appellee,

v.

**Marie POZZA, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 29, 1999.

Filed April 12, 2000.

---

J. Michael Farrell, Philadelphia, for appellant.

Michael Gehrig, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before POPOVICH, JOYCE and TAMILIA, JJ.

POPOVICH, J.:

¶ 1 The defendant/appellant, Marie Pozza, appeals the judgment of sentence for theft by deception and insurance fraud by questioning: 1) the sufficiency and weight of the evidence; 2) the legality of the sentence; and 3) the denial of pretrial motions to exclude evidence and dismiss charges because pretrial delay prejudiced her defense.[1] We affirm.

¶ 2 Viewing the evidence in a light most favorable to the verdict-winner, and

---

1. The nine issues raised by the appellant have been consolidated and rearranged for ease of discussion.

drawing all reasonable inferences there-from, the record reveals that in October of 1984, the appellant obtained a disability insurance policy from State Life Insurance Company. In February of 1985, the appellant filed a claim with State Life for total disability from an accident occurring on November 19, 1984. The nature of the appellant's disability was carpal tunnel syndrome and a cervical lumbar sprain. Appellant substantiated her claim by filing forms (from November of 1984 to November of 1987) describing her injuries: numbness in left side, carpal tunnel syndrome of left hand and pain in her back.

¶ 3 The appellant stated she was disabled completely and not working during the three-year period. Her attending physician's (Dr. LoBianco's) records confirmed that the patient was disabled totally and her unemployment status would continue. State Life paid $1,150.00 for thirty months and, thereafter, an additional $22,000.00 to close the claim.

¶ 4 On November 12, 1985, the appellant secured a mortgage (for $59,540.59) from CUNA Mutual Insurance Company. Appellant purchased credit disability insurance for the mortgage with CUNA. The insurance application asked whether the appellant missed work due to disability in the six months prior to the effective date (11/12/85) of CUNA's policy. The appellant wrote that she missed no work during the six months preceding the effective date of the policy.

¶ 5 On May 2, 1989, the appellant filed a claim with CUNA that she was involved in an automobile accident on the 24th of November, 1987. Her disabilities were cervical lumbar sprain and carpal tunnel syndrome, both of which first appeared on November 24th. The form stated the appellant's last full day of work was 11/23/87, with her disability starting the next day. In a letter dated June 29, 1989, the appellant's physician responded to CUNA's in-quiry that she received medical treatment between May 21 and November 21, 1985. In a form dated June 30, 1989, the appellant's lumbosacral sprain, cervical sprain and carpal tunnel syndrome start date and treatment occurred on November 23 and 24, 1987.

¶ 6 CUNA paid the appellant $27,627.50. Prior to payment, the appellant instituted a civil action in April of 1991 against CUNA for breach of contract. CUNA filed a separate suit against the appellant. Each suit was dismissed with prejudice by consent of both parties and CUNA's payment of $5,000.00.

¶ 7 CUNA's counsel, after deposing the appellant for the civil case, contacted the District Attorney's insurance fraud unit. It appears the appellant stated she missed work for a period of ten months after the November 1984 accident, which would have brought the November 1985 disability insurance application with CUNA (of not being injured within six months of the effective date of the policy) into question. Thereafter, the appellant was tried and convicted of the present offenses, with the imposition of a five-year period of probation and restitution to CUNA.

¶ 8 In assessing the sufficiency of the evidence, the test for review is whether, accepting as true all the evidence and reasonable inferences therefrom, the jury could properly base its verdict on evidence sufficient in law to prove a defendant guilty beyond a reasonable doubt. *Commonwealth v. Sero*, 478 Pa. 440, 387 A.2d 63 (1978).

¶ 9 At bar, the fraud statute requires that a defendant act "[k]nowingly and with the intent to defraud any insurer ... [by] present[ing] ... any statement forming a part of, or in support of, a claim that contains any false ... information concerning any fact or thing material to the claim." 18 Pa.C.S.A. § 4117.[2]

2. Section 4117 reads in relevant part:

(a) **Offense defined.**—A person commits an offense if the person does any of the follow-

¶ 10 The prosecution proved Pozza "made representations ... to CUNA that she had not been out of work on disability for the same disability [for which a claim had been filed earlier with State Life and] within the period of six months before her CUNA insurance became effective."

¶ 11 The appellant was injured in an automobile accident in 1984 and filed a claim for total disability with State Life, which encompassed November of 1984 until November of 1987. A monthly form was submitted by the appellant indicating the origin of her claim and the nature of her injuries. A like form was completed by her attending physician stating the disability was total and the return date for work was indefinite.

¶ 12 In December of 1987, State Life settled the appellant's claim for $22,000.00.[3] Interestingly, on November 12, 1985, the appellant applied for a mortgage loan with CUNA secured by "credit disability" insurance effective November 21, 1985. The disability policy precluded payment if an injury which "totally disabled" a policyholder occurred "at any time during the six month's period immediately preceding the effective date" of the insurance policy. Appellant/applicant answered "No" to the question whether she lost work because of an illness/injury in the six months prior to the date the insurance became effective.

¶ 13 At the time State Life settled its claim with appellant, she filed a disability claim with CUNA continuing unabated receipt of benefit checks. The appellant filed a claim with CUNA on November 24, 1987, contending her injuries were sus-

tained in an automobile accident occurring on November 23, 1987. The injuries were acute lumbosacral sprain, cervical sprain and bilateral carpal tunnel syndrome.[4] According to Dr. LoBianco, the conditions remained "unchanged", the disability was "total" and the return date for employment was "indefinite". The appellant was paid $27,627.50 from November 24, 1987, to August 13, 1990. In April of 1991, the appellant sued CUNA to enforce continued payment of disability benefits. In August of 1991, CUNA paid the appellant $17,150.17.

¶ 14 Thereafter, CUNA and State Life sued the appellant. Counsel for the insurers deposed the appellant in July, 1994. She acknowledged filing a claim with State Life for an accident in November of 1984. And, she admitted being out of work for ten months because of the accident. This rendered the appellant's denial of injury six months before the effective date (11/21/85) of CUNA's disability policy suspect.

¶ 15 Counsel for the appellant attempted, during the cross-examination of CUNA's civil counsel (Paul Keenan), to show that the appellant's deposition nine years after the crime, concerning her employment status, could have been merely a lapse in memory just as CUNA's counsel could not recall the events leading up to the 1995 lawsuit. Counsel for the appellant, during his closing, argued that the appellant sustained separate injuries in her 1984 and 1987 auto accidents—similar disabilities but to the opposite sides of her body.

offer was made by State Life in December of 1987.

4. These were the exact same injuries sustained by the appellant in the State Life claim save that defense counsel argued that the later injuries were on the opposite side of the appellant's body. Given the verdict, the jury did not believe this distinction and found the appellant guilty as charged.

ing:
(2) Knowingly and with the intent to defraud any insurer or self-insured, presents or causes to be presented to any insurer or self-insured any statement forming a part of, or in support of, a claim that contains any false, incomplete or misleading information concerning any fact or thing material to the claim.

3. The appellant was paid a monthly stipend of $1,150.00 for three years before a settlement

¶ 16 We find the jury, as the trier-of-fact and credibility-assessor, concluded that the appellant provided false, incomplete and misleading information in support of her claim with CUNA to obtain money. This constituted fraud and theft by deception.[5] The jury, having the right to believe all, some, or none of the appellant's case, decided that the CUNA claim existed at the time Pozza purchased CUNA's disability policy in 1985 and she collected money for an injury which existed six months of the effective date of CUNA's policy in November of 1995.

¶ 17 The evidence was sufficient both in quantity and quality to sustain the conviction. Further, no abuse of discretion on the part of the court occurred in denying the weight of the evidence argument because the verdict is not so contrary to the evidence as to make the award of a new trial imperative so that right may be given another opportunity to prevail. *Commonwealth v. Barnhart*, 290 Pa.Super. 182, 434 A.2d 191, 192 (1981).

■ ¶ 18 Likewise, the argument of the appellant that the trial court erred in denying her motion in limine to exclude her receipt of benefits from State Life (as well as the commission of crimes regarding her application for benefits) is meritless in that the introduction of the facts surrounding State Life's receipt of a claim from the appellant was to establish proof of a plan, scheme and design to defraud CUNA, all of which is admissible to prove guilt.

*Commonwealth v. Banks*, 513 Pa. 318, 521 A.2d 1 (1987).

■ ¶ 19 Next, the appellant challenges the constitutionality of 18 Pa.C.S.A. § 4117(a)(2) on void-for-vagueness grounds. We find that it sets forth the prohibited conduct with sufficient clarity to place one on notice that "knowingly and with intent to defraud any insurer" of its property by "false, incomplete or misleading information" is criminalized. The statute is specific, definite and without ambiguity as to what violates the law. *Commonwealth v. Hull*, 705 A.2d 911, 914 (Pa.Super.1998). Also, due process is not offended in that the statute provides fair notice and warning of what is prohibited. This renders the constitutional argument meritless. *Smith v. Goguen*, 415 U.S. 566, 572, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974).

■ ¶ 20 The legality of the sentence is assailed under the banner that it is "mutually duplicitous" and barred by Double Jeopardy principles. We read this contention as necessitating a review of the fraud and theft statutes in light of whether one is subsumed by the other and merge for sentencing purposes.

■ ¶ 21 In matters of merger, the "operative inquiry ... is whether the elements of the lesser included offense are a necessary subcomponent but not a sufficient component of elements of another crime." *Commonwealth v. Anderson*, 538 Pa. 574, 650 A.2d 20, 23 (1994). If both crimes require proof of at least one ele-

---

5. The theft by deception statute provides:
   **(a) Offense defined.**—A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:
   (1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise;
   (2) prevents another from acquiring information which would affect his judgment of a transaction; or

   (3) fails to correct a false impression which the deceiver previously created or reinforced, or which the deceiver knows to be influencing another to whom he stands in a fiduciary or confidential relationship.
   **(b) Exception.**—The term "deceive" does not, however, include falsity as to matters having no pecuniary significance, or puffing by statements unlikely to deceive ordinary persons in the group addressed.
   18 Pa.C.S.A. § 3922.

ment which the other does not, then the crimes do not merge for sentencing purposes. *Id.*

¶ 22 Here, the two statutes contain elements absent from the other: The insurance fraud statute is contravened when "knowingly and with intent to defraud any insurer ... [one] presents ... any false ... information concerning any fact ... material to the claim." On the other hand, theft by deception occurs when one "intentionally obtains" another's property by deception.

¶ 23 In the former statute there is no requirement that the transference of the insurer's property must take place before a crime occurs. Rather, the mere submission of any false statement done knowingly and with intent to defraud is sufficient to violate the statute. In contrast, the theft statute requires the property of another to be in the possession of an unauthorized person by means of deception before a crime is committed.

¶ 24 Given the different conduct sought to be proscribed by the two statutes, each prohibiting behavior distinguishable from the other, both offenses are viable under the facts of this case and will stand unimpeded by the appellant's duplicitous argument.

■ ¶ 25 We now turn to the appellant's assertion that the trial court erred in imposing restitution as part of the sentence in the face of a settlement agreement dismissing with prejudice a civil suit involving the same parties and related claims.

¶ 26 The criminal and civil courts are arenas for vindicating disparate rights and allow for resolution of distinct complaints not reviewable by the other. The corridors of justice lead to different forums depending upon the claim sought to be resolved. In civil court, suit is instituted to address violations against one's person and/or property initiated by the wronged individual or entity. The burden of proof is on the party commencing suit. In a criminal case, the arsenal of weapons at the disposal of the Commonwealth are mobilized to rectify a violation of the laws of the jurisdiction, attain justice for the victim and appease the citizenry at large for the wrong endured by a fellow citizen.

¶ 27 Further, a trial judge is cloaked with the mantel of authority to penalize a transgression of the criminal law. 42 Pa. C.S.A. § 9721 et seq. This authority manifests itself in 18 Pa.C.S.A. § 1106, wherein restitution for injuries to person and property is listed for a crime where the unlawful conversion or obtaining of the property of another has occurred. Restitution may be made a condition of probation or parole and shall not be reduced by any amount an insurance company receives from another insurance company. *Id.* at § 1106(c)(1)(i).

¶ 28 An insurance company is listed as a "victim", albeit below the "Crime Victim's Compensation Board", and any other government agency in the prioritized list of those who shall be entitled to restitution. A "victim" in the definitional section is described as "any insurance company that has compensated the victim for loss under an insurance contract". *Id.*

¶ 29 Giving the statute a common sense interpretation, with the caveat that the Legislature does not enact laws that reach an absurd or unintended result, we read the restitution statute to include the reimbursement to an insurer who has lost money when the object of deception and fraud. Statutory Construction Act, 1 Pa.C.S.A. § 1921 (Legislature does not intend an absurd result when enactments are passed). Here, such a result would be obtained if we were to exclude the insurer from the list of those entitled to restitution.[6]

---

**6.** The sentencing court directed that the victim/insurer be paid an amount equal to the $27,627.50 received by the appellant minus the $5,000.00 advanced to the accused in the civil suit to settle the litigation on the basis the insurer waived the latter amount by the settlement agreement. This disposition is not

¶ 30 The appellant also argues that the trial court erred in denying her motions to dismiss charges since they were brought "at least six (6) and at the most (11) years between the date of the offense and the date the complaint was signed [because] ... the [appellant] was substantially prejudiced by the loss of evidence and favorable witnesses."

¶ 31 It is clear that a defendant is entitled to relief under the Due Process clause if she was prejudiced by prearrest delay and the purpose of the delay was to gain a tactical advantage over her. *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). Sub judice, the appellant avers her civil attorneys did not testify at trial because their memories had faded. If the case had been tried sooner, it is the appellant's contention that her civil counsel would have recalled that she did not work during the six-month period before the effective date of CUNA's policy.

¶ 32 Questions of credibility were decided by the trier-of-fact against the appellant's interest. This is evident with her deposition of being injured ten months prior to buying disability insurance from CUNA. This tainted her application form by showing she had not been injured six months before applying for insurance. As such, we fail to detect prejudice in the case, which discounts the need for a remand to hear the reasons for the prearrest delay. *Commonwealth v. Snyder*, 552 Pa. 44, 713 A.2d 596 (1998).

¶ 33 Finding no merit to the appellant's claim, we affirm the judgment of sentence.[7]

¶ 34 Judgment of sentence affirmed.

questioned by the insurer on appeal, which dispenses with the need to address it further.

7. The appellant also proffers allegations that the trial court erred in denying her motion to dismiss (because the criminal case was the subject of a civil suit dismissed with prejudice

and the consent of all parties) and allowing the Commonwealth to convey purportedly to the jury that CUNA was not seeking to recover money from the appellant. We find neither averment to be meritorious.