J. S58011/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| RUTH E. GETTEL, | : | No. 533 MDA 2017 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, March 2, 2017,
in the Court of Common Pleas of Perry County
Criminal Division at No. CP-50-CR-0000413-2015

BEFORE:  GANTMAN, P.J., SHOGAN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED NOVEMBER 07, 2017**

Ruth E. Gettel appeals from the March 2, 2017 aggregate judgment of sentence of 1 to 12 months' imprisonment, to be followed by 9 months' probation, imposed after a jury found her guilty of insurance fraud and false reports to law enforcement authorities.[1]  After careful review, we affirm the judgment of sentence.

The trial court summarized the relevant facts of this case as follows:

> [On November 26, 2014, a]t approximately 3:40 a.m. [Pennsylvania State Police] Trooper Sarah Rhinehart responded to a vehicle crash and fire on Spinning Wheel Road in Watts Township. Arriving on scene, Trooper Rhinehart observed a sedan engulfed in flames.  After running the registration, Trooper Rhinehart was able to determine the vehicle belonged to [a]ppellant.  On December 1, 201[4], Trooper Rhinehart got in touch

---

[1] 18 Pa.C.S.A. §§ 4117(a)(2) and 4906(b)(1), respectively.

with [a]ppellant and an interview was set for December 5, 201[4]. Appellant informed Trooper Rhinehart that the vehicle in question was stolen and that she did not have any information concerning what happened after it was parked. Appellant later supplied Trooper Rhinehart with all of her insurance information and then filed a claim with Safe Auto, her insurance provider. In a subsequent interview, held several months later, [a]ppellant informed Trooper Rhinehart that she was not completely honest in the first interview. Appellant informed Trooper Rhinehart that she knew who took the vehicle and the person's name was Chad. When Trooper Rhinehart called Stephanie Foster[, appellant's friend,] to get the contact information on Chad, Stephanie informed the Trooper that the only people at her residence that night w[ere] herself, [a]ppellant, and her now ex-boyfriend. Trooper Rhinehart eventually picked [a]ppellant up on a warrant at Harrisburg Area Community College. When [a]ppellant was picked up on the warrant, she informed Trooper Rhinehart that the information regarding Chad was not true.

Trial court opinion, 6/2/17 at 1-2 (citations to notes of testimony and footnotes omitted).[2]

Appellant was subsequently charged with insurance fraud and false reports to law enforcement authorities in connection with this incident. On January 24, 2017, appellant proceeded to a jury trial and was found guilty of all charges. As noted, appellant was sentenced to an aggregate term of 1 to 12 months' imprisonment, to be followed by 9 months' probation, on March 2, 2017. On March 6, 2017, appellant filed a post-sentence motion

---

[2] We note that the trial court's June 2, 2017 opinion does not contain pagination; for the ease of our discussion, we have assigned each page a corresponding number.

for reconsideration of her sentence, which was denied by the trial court on March 17, 2017. This timely appeal followed.[3]

On appeal, appellant raises the following issues for our review:

I. Was the evidence concerning the charge of Insurance Fraud insufficient as a matter of law where the Commonwealth presented no evidence of (1) [a]ppellant's intent to defraud the insurer OR (2) materiality of any false statements?

II. Did the trial court abuse its discretion when sentencing [a]ppellant to a term of imprisonment after interpreting [a]ppellant's silence at sentencing as lack of remorse?

Appellant's brief at 3-4.

We begin by addressing appellant's claim that there was insufficient evidence to sustain her conviction for insurance fraud because the Commonwealth failed to prove she intended to defraud Safe Auto or made any materially false statements. (*Id.* at 14, 16.) Preliminarily, we note that appellant's Rule 1925(b) statement fails to specify the elements of insurance fraud that she believes the Commonwealth failed to prove. (*See* "Concise Statement," 4/27/17 at ¶ 1; certified record no. 33.) Accordingly, we could find this claim waived. *See Commonwealth v. Williams*, 959 A.2d 1252,

---

[3] On March 24, 2017, the trial court ordered appellant to file a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b), within 25 days. On April 26, 2017, the trial court granted appellant's request for an extension of time to file her Rule 1925(b) statement. On April 27, 2017, appellant filed a timely Rule 1925(b) statement. The trial court filed its Rule 1925(a) opinion on June 2, 2017.

1257–1258 (Pa.Super. 2008) (finding waiver of appellant's sufficiency of evidence claim where he failed to specify in his Rule 1925(b) statement the elements of particular crime not proven by the Commonwealth). Nonetheless, given the trial court's examination of this issue in its opinion, we elect to dispose of it on the merits.

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Thomas*, 988 A.2d 669, 670 (Pa.Super. 2009) (citations omitted), *appeal denied*, 4 A.3d 1054 (Pa. 2010).

A person is guilty of insurance fraud when she:

> knowingly and with the intent to defraud any insurer or self-insured, presents or causes to be presented to any insurer or self-insured any statement forming a part of, or in support of, a claim that contains any false, incomplete or misleading information concerning any fact or thing material to the claim.

18 Pa.C.S.A. § 4117(a)(2). A person acts "knowingly" when "[s]he is aware that it is practically certain that h[er] conduct will cause such a result." 18 Pa.C.S.A. § 302(b)(2)(ii). Likewise, a person acts "intentionally" when "it is h[er] conscious object to engage in conduct of that nature or to cause

- 4 -

such a result." *Id.* § 302(b)(1)(i). Lastly, Section 4117 defines the term "statement," in part, as "[a]ny oral or written presentation or other evidence of loss, injury or expense, including, but not limited to, any notice, statement, proof of loss, bill of lading, receipt for payment, invoice, account, estimate of property damages, bill for services, . . . or computer-generated documents." 18 Pa.C.S.A. § 4117(i).

Viewing the evidence in the light most favorable to the Commonwealth, the verdict winner, we find that there was sufficient evidence to support appellant's conviction for insurance fraud. The evidence introduced at trial established that appellant knowingly made three false statements[4] to Trooper Rhinehart during the course of her investigation into appellant's vehicle, which was found crashed into a tree and engulfed in flames in the early morning hours of November 26, 2014. (Notes of testimony, 1/24/17 at 32-33, 45, 55.) That same day, appellant submitted an insurance claim with Safe Auto in the amount of $9,599 on the basis her

---

[4] Specifically, on December 5, 2014, appellant informed Trooper Rhinehart that her vehicle had been stolen after she had parked it outside her sister's house and that she was unaware of who had taken it. (Notes of testimony, 1/24/17 at 36-38.) During a subsequent interview several months later, appellant informed Trooper Rhinehart that she had lied during their initial discussion and that an individual named "Chad" who was staying with her and Stephanie Foster that evening had taken it. (*Id.* at 47.) Foster, however, testified at trial that the only people at her residence that evening were herself, her then-boyfriend, Sean Painter, and appellant, and she did not know the "Chad" appellant was referring to. (*Id.* at 93-95.) After appellant was picked up on an outstanding warrant, she informed Trooper Rhinehart that her statement regarding Chad was not true. (*Id.* at 60.)

vehicle was "stolen" and "subsequently burned as a result of an accident[,]" knowing full well that this was untrue. (*Id.* at 42, 78, 86.) Thereafter, on January 5, 2015, appellant submitted a notarized theft affidavit to Safe Auto. (*Id.* at 84.) Carey Latsha, an investigator with Safe Auto, testified that Safe Auto has not paid the claim. (*Id.* at 86, 89.)

Clearly, the requisite intent to commit insurance fraud may be inferred from the surrounding circumstances; namely, appellant's conduct during the course of Trooper Rhinehart's investigation and her submission of an insurance claim based upon this fabricated narrative. *See*, *e.g.*, *Commonwealth v. Sanchez*, 848 A.2d 977 (Pa.Super. 2004) (defendant had intent to commit insurance fraud when he signed forms in support of a claim even though he knew that the car in question was not insured at the time of the accident). Moreover, although Section 4117 does not provide guidance on the meaning of the word "material," the statute does not require an insuree to cause actual injury to the insurer. *See* *Commonwealth v. Pozza*, 750 A.2d 889, 894 (Pa.Super. 2000) (stating, "[i]n the [insurance fraud] statute there is no requirement that the transference of the insurer's property must take place before a crime occurs. Rather, the mere submission of any false statement done knowingly and with intent to defraud is sufficient to violate the statute."). Based on the foregoing, we find that appellant's claim that there was sufficient evidence to sustain her conviction for insurance fraud must fail.

We now turn to appellant's claim that "the trial court abuse[d] its discretion when sentencing [a]ppellant to a term of imprisonment after interpreting [her] silence as a lack of remorse[.]" (Appellant's brief at 4, 20.)

Our standard of review in assessing whether a trial court has erred in fashioning a sentence is well settled.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, [a]ppellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa.Super. 2014) (citation omitted), *appeal denied*, 117 A.3d 297 (Pa. 2015).

Where an appellant challenges the discretionary aspects of her sentence, as is the case here, the right to appellate review is not absolute. *See Commonwealth v. Allen*, 24 A.3d 1058, 1064 (Pa.Super. 2011). Rather, an appellant challenging the discretionary aspects of her sentence must invoke this court's jurisdiction by satisfying the following four-part test:

> (1) whether the appeal is timely; (2) whether appellant preserved his issue; (3) whether appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and

(4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

***Commonwealth v. Carrillo-Diaz***, 64 A.3d 722, 725 (Pa.Super. 2013) (citations omitted).

Here, the record reveals that appellant filed a timely notice of appeal on March 23, 2017. Appellant also preserved her discretionary aspects of sentencing claim in her March 6, 2017 post-sentence motion. Contrary to the Commonwealth's contention, appellant included a statement in her brief that comports with the requirements of Pa.R.A.P. 2119(f). (**See** appellant's brief at 10-13; Commonwealth's brief at 6.) Accordingly, we must determine whether appellant has raised a substantial question.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." ***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa.Super. 2013), ***appeal denied***, 76 A.3d 538 (Pa. 2013) (citation omitted). "A substantial question exists only when appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Glass***, 50 A.3d 720, 727 (Pa.Super. 2012), ***appeal denied***, 63 A.3d 774 (Pa. 2013) (citation omitted).

Relying, in part, on ***Commonwealth v. Bowen***, 975 A.2d 1120 (Pa.Super. 2009), appellant contends in her Rule 2119(f) statement that the

trial court sentenced her to imprisonment, in lieu of probation, after impermissibly interpreting her silence during sentencing as a lack of remorse. (Appellant's brief at 11-13.) This court has long recognized that "a claim that a sentence is excessive because the trial court relied on an impermissible factor raises a substantial question." *Allen*, 24 A.3d at 1064-1065; *see also Bowen*, 975 A.2d at 1122 (defendant's contention that his sentence "was based on an unconstitutional factor . . . raises a substantial question for our review"). Accordingly, we proceed to consider the merits of appellant's discretionary sentencing claim.

Herein, we find particularly instructive the *Bowen* decision upon which appellant relies. *Bowen* involved a defendant who elected not to testify during trial and continued to remain silent at sentencing. *Id.* at 1121. The trial court imposed a standard-range sentence for simple assault and a consecutive, aggravated-range sentence for terroristic threats. *Id.* As justification for the aggravated-range sentence, the trial court cited defendant's poor employment history, long history of recidivism, the victim's emotional trauma, and his failure to show any remorse, even after the jury's decision. *Id.* at 1121–1122. On appeal, a panel of this court disapproved of the trial court's "consider[ation of the] defendant's silence at sentencing as indicative of his failure to take responsibility for the crimes of which he was convicted." *Id.* at 1121.

The ***Bowen*** court emphasized that although it is "appropriate for a trial court to consider a defendant's lack of remorse as a factor at sentencing, provided that it is specifically considered in relation to protection of the public, the gravity of the offense, and the defendant's rehabilitative needs[,]" a defendant's silence "may not be **the sole factor** in determining a defendant's lack of remorse[.]" ***Id.*** at 1125, 1127 (emphasis added). However, the ***Bowen*** court ultimately concluded that a remand for resentencing was not necessary, given the trial court's consideration of multiple other factors in imposing an "individualized sentence." ***Id.*** at 1127-1128, citing ***Commonwealth v. P.L.S.***, 894 A.2d 120, 133 (Pa.Super. 2006) (finding that even if the trial court considered an inappropriate factor at sentencing, "the court offered significant other support for sentencing in excess of the guidelines in this case"), ***appeal denied***, 906 A.2d 542 (Pa. 2006).

Instantly, the trial court sentenced appellant to an aggregate term of 1 to 12 months' imprisonment, to be followed by 9 months' probation, which was within the standard-range of the Sentencing Guidelines. Prior to imposing sentence, the trial court made the following comments at the March 2, 2017 sentencing hearing:

> All right, [appellant], what I am going to tell you about this case and what, I guess, bothered me about it from your end is you had so many opportunities to step in to [sic] this process. Meanwhile, this investigation went on [for] months and months and months, and the story changed. At

- 10 -

least what came out at trial, the story changed multiple times. And at any point in there the madness could have been stopped.

I say the madness. The whole story, the continuing investigation, the story changing, ***et cetera***; at any point throughout that process, by a dash of honesty, and that never happened.

**I am also disappointed today that you had nothing to say. No remorse, no apologies, you name it.**

Notes of testimony, 3/2/17 at 3-4 (emphasis added).

Like ***Bowen***, the record reveals that the trial court did not rely solely on appellant's lack of remorse or silence in fashioning her sentence. Additionally, the trial court was in possession of a presentence investigation ("PSI") report and clearly considered it. (***See*** notes of testimony, 3/2/17 at 2; ***see also*** trial court opinion, 6/2/17 at 6.) Where the trial court has the benefit of a PSI report, "we shall . . . presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Commonwealth v. Antidormi***, 84 A.3d 736, 761 (Pa.Super. 2014) (citation omitted), ***appeal denied***, 95 A.3d 275 (Pa. 2014). And similar to ***Bowen***, although the trial court briefly expressed its disappointment that appellant failed to apologize at sentencing, "[t]he record is unclear . . . as to how much of a factor [a]ppellant's silence was in the [trial] court's finding of

lack of remorse." ***Bowen***, 975 A.2d at 1127.[5]  Accordingly, we conclude that appellant's challenge to the discretionary aspects of her sentence must fail.

For all the foregoing reasons, we affirm appellant's March 2, 2017 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/7/2017

---

[5] Notably, the trial court stated in its June 2, 2017 opinion that appellant's silence and lack of remorse "had no influence on the sentence for which [a]ppellant received."  (Trial court opinion, 6/2/17 at 6.)