J-A28010-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JAMAT ALI MANZOOR :
:
Appellant : No. 1121 MDA 2017

Appeal from the Judgment of Sentence March 1, 2017
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0002798-2016

BEFORE:  LAZARUS, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:　　　　**FILED: JANUARY 11, 2019**

Jamat Ali Manzoor appeals from the judgment of sentence, entered in the Court of Common Pleas of Dauphin County, following his conviction of two counts of arson[1] and one count of insurance fraud.[2]  After our review, we affirm.

The following facts have been gleaned from the certified record. Manzoor owned a single-family home at 3507 Elmerton Avenue in Susquehanna Township ("Property"), which he had previously rented out but was then vacant.  On April 1, 2014, Matthew Hartman, a volunteer firefighter with Progress Fire Company, responded to a fire at the Property, at which time the first and second floors were in flames.  Hartman was the first through the

---

[1] 18 Pa.C.S.A. § 3301(a)(1)(i) & (a)(1)(ii).

[2] 18 Pa.C.S.A. § 4117(a)(2).

side door of the home, which he had to force open with an axe. Within a few minutes, Hartman felt his shoulder catch on fire and his fingers began to hurt. He was subsequently treated for burns to his finger and both shoulders at the Hershey Medical Center. Hartman testified that the blistering lasted for three weeks and the pain was excruciating.

Harry Liebfried, a general contractor whom Manzoor had hired to perform work at the Property, arrived at the scene as the fire was in progress. Liebfried testified that the home was unoccupied at the time and that he had been there the day before to determine what needed to be done. Liebfried testified that he had been given a key to the home, which he turned over to police after the fire.

George Drees, Fire Marshal Chief of Susquehanna Township, testified that he arrived at the Property after the fire had been brought under control and observed Manzoor standing near the side of the house. Chief Drees noticed that Manzoor was singed on his arms, the side of his face, and his hair. Manzoor told Chief Drees that he had returned to the Property from a trip to the mall and opened the front door, at which point there was a "whoosh" sound and he got burned. Manzoor stated that he had not stepped inside the Property.

Detective Michael Mull of the Susquehanna Township Police responded to the fire and subsequently spent nearly an hour with Manzoor at the police station. Detective Mull testified that Manzoor smelled of gasoline to the point that it caused a burning sensation in Detective Mull's nose, and caused his

eyes to water. Police subsequently took Manzoor's pants, belt, and shirt for analysis.

Detective Dennis Woodring, of the Dauphin County District Attorney's Office, testified as an expert in the causes and origins of fire and K-9 accelerant odor detection. Detective Woodring's K-9 partner, Loki, is one of about fifty K-9s in the United States federally certified to assist in the search for trace evidence of ignitable fluid in a fire. When Detective Woodring and Loki arrived at the Property, he was advised that some of the firefighters had smelled what they believed to be gasoline on the second floor of the structure. As a result, Detective Woodring used a ground ladder to access the second floor of the structure, where he immediately smelled gasoline. With the assistance of K-9 Loki, Detective Woodring collected two samples from the second floor and a sample from the stairway and submitted them to the lab. When asked to describe his findings, Detective Woodring testified:

> With all the evidence that we examined and took into consideration and the examination of the fire scene itself, the witness statements, the 911 witness statements, other statements that were taken, it is my opinion that gasoline was poured on the second floor in the bedrooms; the one above the living room where that floor is completely gone, the bedroom where we collected the samples in the hallway.
>
> And it is also my opinion that the gasoline was trailed down through the hallway and down the stairs, and the gasoline was ignited by an open flame in the area where that red tape was by the steps that I put the arc mapping that area there. The gas was used as a trailer to get the fire going up the stairs and into those bedrooms.

N.T. Trial, 11/1/16, at 71-72.

Detective Woodring further testified that he and Loki went to the police station on the date of the fire to search Manzoor's clothing, at which time Loki alerted on both legs of Manzoor's jeans. Finally, Detective Woodring described finding a key on a key-ring next to the stove in the home, which opened the main entry door to the dining area of the home.

Nicholas Plumley, a forensic scientist and expert in trace evidence analysis and identification of gasoline and other accelerants, received sealed samples taken by Detective Woodring from the Property after the fire for the purpose of testing them for ignitable liquids and/or accelerants. In two out of the three samples, Plumley was able to identify the presence of gasoline. In two other samples, taken from Manzoor's pants, gasoline was also present.

Karl New, an adjuster with the American Modern Insurance Company ("AMI"), testified that, at the time of the fire, the Property was insured for $173,208. However, the policy included a vacancy endorsement, which New indicated that most people are unaware of, which reduced the limits by 40%, to approximately $103,000. Manzoor owed the bank a total of about $105,000 on two mortgages. New testified that, in Pennsylvania, the lienholder of a mortgage is not liable for the action of the insured. Therefore, an insurance company must pay the lienholder its portion of proceeds, regardless of whether the fire was caused by an intentional act such as arson. New testified that AMI paid $103,924.80 to Santander Bank, the mortgage lienholder. During New's testimony, the Commonwealth introduced and played for the

jury an audio recording of an interview with Manzoor conducted by the insurance company in which Manzoor denied setting the fire.

Manzoor's wife, Joanne, testified that the couple had two residences, one in Tower City, Pennsylvania, and the other in Howard Beach, New York. At the time of the fire she was at the New York residence. She testified that in December 2013, she made arrangements to change the locks on the Property and thereafter received three new keys for the house. Mrs. Manzoor kept one and had it with her on the day of the fire; Manzoor kept one; and Liebfried, the contractor, had the third, which he returned to the police after the fire.

Manzoor presented three character witnesses who testified to Manzoor's honesty and law-abiding character.

Finally, Manzoor presented the testimony of Heather Harris, a forensic chemistry consultant and professor in forensic chemistry. Ms. Harris testified that, while she did not perform any independent testing of the samples taken from the Property, her review of the data provided to her did not support the conclusion that gasoline was present on the samples in question.

On November 3, 2016, Manzoor was convicted of the above charges and, on March 1, 2017, the trial court sentenced him to an aggregate term of 33 months' to 11 years' incarceration and a $500 fine. The trial court also ordered Manzoor to pay $117,666 in restitution to AMI and $2,355.10 in restitution to Susquehanna Fireman's Fund. Additionally, the trial court ordered PennDot to place a lien on Manzoor's Corvette in the amount of

$50,000 in favor of the Fines and Costs Office. Manzoor filed a post-sentence motion on March 13, 2017, which was denied on June 5, 2017. Manzoor filed a notice of appeal on July 3, 2017, followed by a a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Manzoor raises the following issues on appeal:

    1. Was there insufficient evidence to convict [Manzoor] and was the verdict against the weight of the evidence?

    2. Did the court err in allowing testimony regarding an alleged extramarital affair and was that irrelevant testimony so harmful to require a new trial?

    3. Did the court err in ordering PennDot to place a lien on [Manzoor's] vehicle in favor of the [F]ines and [C]osts [O]ffice?

    4. Was trial counsel ineffective for failing to secure proper character testimony?

Brief of Appellant, at 9.

Manzoor first challenges the weight and sufficiency of the evidence supporting his convictions. "The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Gibbs*, 981 A.2d 274, 280 (Pa. Super. 2009).

    The offense of arson – endangering persons is defined as follows:

    (1) A person commits a felony of the first degree if he intentionally starts a fire or causes an explosion, or if he aids, counsels, pays or agrees to pay another to cause a fire or explosion, whether on his own property or on that of another, and if:

(i) he thereby recklessly places another person in danger of death or bodily injury, including but not limited to a firefighter, police officer or other person actively engaged in fighting the fire; or

(ii) he commits the act with the purpose of destroying or damaging an inhabited building or occupied structure of another.

18 Pa.C.S.A. § 3301. "[A] conviction for arson requires the establishment of three elements: (1) that there was a fire; (2) that it was of incendiary origin; and (3) that defendant was the guilty party." *Commonwealth v. Galloway*, 448 A.2d 568, 571 (Pa. Super. 1982). Arson may be proved purely by circumstantial evidence where the circumstances reasonably and naturally justify an inference of the guilt of the accused, and the volume and quality overcome the presumption of innocence and satisfy the jury of the defendant's guilt beyond a reasonable doubt. *Commonwealth v. Wisneski*, 257 A.2d 624, 626 (Pa. Super. 1969). Circumstantial evidence, even if not overwhelming, is sufficient to establish proof of guilt beyond a reasonable doubt. *Commonwealth v. DiNicola*, 468 A.2d 1078, 1080 (Pa. 1983).

Here, Manzoor claims that the evidence presented by the Commonwealth was insufficient to establish beyond a reasonable doubt that he was responsible for starting the fire, or that he did so with criminal intent. Manzoor argues that there were no witnesses to his spreading accelerant throughout the residence, igniting the fire, or being present in the structure when the fire began. He is entitled to no relief.

The evidence presented at trial demonstrated that there was a fire and that gasoline was present in the upstairs bedroom and hallway and on the stairs leading from the first to second floors. Manzoor reeked of gasoline during his interview with police and laboratory testing found gasoline on two samples taken from Manzoor's pants. Although Manzoor claimed to have returned home to discover the fire and stated that he had not entered the dwelling, his key to the residence was found in the kitchen. There were only three keys to the residence, and the other two were accounted for. Firefighter Hartman was treated at the hospital for burns to his shoulders and hands and suffered blistering and "the most excruciating pain" for three weeks after the incident. N.T. Trial, 10/31/16, at 11. This evidence, if believed by the jury, was sufficient to establish that Manzoor committed the offense of arson. *Gibbs*, *supra*.

Manzoor was also convicted of insurance fraud. A person commits insurance fraud if he "[k]nowingly and with the intent to defraud any insurer or self-insured, presents or causes to be presented to any insurer or self-insured any statement forming a part of, or in support of, a claim that contains any false, incomplete or misleading information concerning any fact or thing material to the claim." 18 Pa.C.S.A. § 4117(a)(2). The requisite intent to commit insurance fraud may be inferred from the surrounding circumstances. *See Commonwealth v. Sanchez*, 848 A.2d 977 (Pa. Super. 2004) (defendant had intent to commit insurance fraud when he signed forms in support of claim even though he knew that car in question was not insured at

time of accident). Finally, although section 4117 does not provide guidance on the meaning of the word "material," the statute does not require an insured to cause actual injury to the insurer. **See Commonwealth v. Pozza**, 750 A.2d 889, 894 (Pa. Super. 2000) (under section 4117, there is no requirement that transference of insurer's property must take place before crime occurs; rather, mere submission of any false statement done knowingly and with intent to defraud is sufficient to violate statute). **See also Commonwealth v. Riding**, 68 A.3d 990, 996 (Pa. Super. 2013) (holding that definition of fraud does not include element of detriment to victim).

Here, the evidence at trial established that Manzoor provided AMI with false information in support of an insurance claim, specifically, Manzoor stated that he did not set the fire. The only reason Manzoor made the false statement was to contribute to the success of his claim. Under section 4117, it is immaterial whether the false statement ultimately caused a detriment to the insurance company. **Pozza**, **supra**. Accordingly, viewed in the light most favorable to the Commonwealth, the evidence was sufficient to support Manzoor's conviction for arson. **Gibbs**, **supra**.

Manzoor also asserts that the verdict was against the weight of the evidence.[3]

_____

[3] We note that, in the argument section of his brief, Manzoor combines his weight and sufficiency claims and makes no effort to distinguish his arguments as to the two distinct legal claims. Indeed, the majority of his discussion

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth v. Widmer*, [] 744 A.2d 745, 751–52 ([Pa.] 2000); *Commonwealth v. Brown*, [] 648 A.2d 1177, 1189 ([Pa.] 1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. *Widmer*, [] 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" *Id.* at [] 752 (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." [*Commonwealth v. Brown*, 648 A.2d 1177, 1189 (Pa. 1994)].

*Commonwealth v. Clay*, 64 A.3d 1049, 1054–55 (Pa. 2013).

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. *Brown*, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. *Commonwealth v. Farquharson*, [] 354 A.2d 545 (Pa. 1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should [or should not] be granted in the interest of justice.

_____

appears directed towards his sufficiency claim. For this reason, we could deem Manzoor's weight claim waived. However, because the trial court addressed the claim in its opinion, we decline to find waiver.

- 10 -

**Widmer**, 744 A.2d at 753.

Here, the trial court concluded as follows:

While there existed conflicts in the testimony at trial, the jury clearly found the Commonwealth's witnesses and expert witnesses to be credible, and assigned greater weight to their testimony. Based on the evidence presented, the verdict was certainly not so contrary to the evidence as to shock one's sense of justice. Experts and lay witnesses gave more than ample evidence to connect [Manzoor] to the crimes of arson and insurance fraud, which led to his convictions for both.

Trial Court Opinion, 12/29/17, at 10.

Based upon our review of the record, the trial court did not abuse its discretion in finding that the jury's verdict was not contrary to the weight of the evidence. Nothing in Manzoor's argument, or in our review of the evidence, suggests that the jury's verdict should have shocked the trial court's sense of justice. Accordingly, Manzoor is entitled to no relief.

Manzoor next asserts that the trial court erred in admitting testimony regarding an extra-marital affair he had allegedly engaged in with his nanny. Manzoor claims the testimony was irrelevant and so inflammatory as to deny him a fair trial, as the case involved questions pertaining to his honesty. Accordingly, Manzoor asserts he is entitled to a new trial.

Preliminarily, the Commonwealth asserts that Manzoor has waived this claim for failing to lodge a timely objection "before the evidence was presented to the jury." Brief of Commonwealth, at [12]. The complained-of testimony was elicited by counsel for the Commonwealth from contractor Harry Liebfried and objected to by defense counsel as follows:

Q:  Now his nanny, did you ever have contact with the nanny?

A:  I thought it was his wife.

Q:  Now that would be — what name did you know her by?

A:  Sima. I don't know. I thought that's how you pronounce it, something like that.

Q:  Sima, S-I-M-A?

A:  Yeah.

Q:  What made you think she was his wife?

A:  That's how he introduced her to me, as his wife, I thought, and she was there with the kids all the time.

Q:  And did you witness any conduct that would be consistent with that sort of a relationship?

MR. DAVIDSON: Objection: relevance.

THE COURT: Overruled.

THE WITNESS: Yeah. I mean, they were together all the time.

BY MR. CHARDO:

Q:  Any signs of affection or that sort of thing?

A:  Yeah. They looked friendly to me.

Q:  Well describe that for us.

A:  I mean, I didn't see them making out or nothing like that.

Q:  Did they act like man and wife?

A:  Yes.

N.T. Trial, 10/31/16, at 28-29.

Based on the foregoing, it is apparent that counsel objected to the Comonwealth's line of questioning as soon as it began to delve into the specific nature of Manzoor's relationship with his nanny.  The purpose of the rule requiring timely objections is to afford the trial court an opportunity to take

corrective action to rectify errors. ***Fudala v. Leedom***, 411 A.2d 548, 549 (Pa. Super. 1979). Here, while counsel could have objected as soon as the Commonwealth mentioned the nanny's name, the objection was nevertheless sufficiently timely to allow the court an opportunity to take any corrective action it may have deemed necessary. Accordingly, we decline to find waiver in this instance and proceed to address the merits of Manzoor's claim.

In reviewing a trial court's ruling concerning the admissibility of evidence, our standard of review is one of deference. Questions concerning the admissibility of evidence are within the sound discretion of the trial court and we will not reverse a trial court's decision to admit evidence absent an abuse of discretion. ***Commonwealth v. Brown***, 52 A.3d 1139, 1197 (Pa. 2012). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." ***Commonwealth v. Mendez***, 74 A.3d 256, 260 (Pa. Super. 2013) (citation omitted).

Pennsylvania Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa.R.E. 401. Pennsylvania Rule of Evidence 402 further provides as follows: "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. Thus, while the general rule of the admissibility of

relevant evidence is subject to various exceptions, the rule that irrelevant evidence is not admissible is categorical. **Commonwealth v. Cook**, 952 A.2d 594, 612 (Pa. 2008). Accordingly, "[t]he threshold inquiry with admission of evidence is whether the evidence is relevant." **Commonwealth v. Collins**, 888 A.2d 564, 577 (Pa. 2005).

Finally, evidence of prior bad acts—such as an extramarital affair—is "not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2).

Here, it is apparent that the prior bad acts evidence of Manzoor's alleged extra-marital affair was inadmissible at trial. While it was clearly beneficial to the Commonwealth to put before the jury evidence of Manzoor's alleged affair to show his propensity for dishonesty, Rule 404(b) strictly prohibits the admissibility of such bad acts evidence for that purpose. In this case, the Commonwealth neither argued nor established the admissibility of the evidence pursuant to any of the exceptions contained in Rule 404(b)(2). Indeed, the sole reason for presenting the evidence was to show that Manzoor acted in accordance with his alleged character trait of dishonesty, a use

specifically prohibited under Rule 404(b)(1). Accordingly, the trial court erred in overruling the defense's objection to this testimony.

However, even where evidence is improperly admitted, the error may be deemed harmless where there is no reasonable possibility that the error could have contributed to the verdict. *See Commonwealth v. Ardestani*, 736 A.2d 552, 556 (Pa. 1999). In such a case, the Commonwealth bears the burden of establishing the harmlessness of the error by showing that: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial affect of the error so insignificant by comparison that the error could not have contributed to the verdict. *Id.* at 556–57.

Here, neither the Commonwealth nor the trial court attempt to defend the admission of the evidence of the alleged affair on its merits. Rather, both the court and the Commonwealth assert that the admission of the evidence constituted harmless error due to the substantial other evidence of Manzoor's guilt presented at trial. We are constrained to agree. The evidence presented at trial overwhelmingly established that Manzoor set fire to the Property and subsequently lied about it to his insurance company. As set forth in greater detail above, both the inside of the Property and Manzoor himself smelled strongly of the odor of gasoline. Manzoor told Chief Drees that he had just

- 15 -

arrived at the Property and had not set foot inside the home, yet his key was discovered in the kitchen. Laboratory testing confirmed the presence of gasoline on samples from inside the home as well as from Manzoor's clothing. Finally, the Commonwealth presented a tape of Manzoor stating to his insurer that he had not set the fire. In light of the evidence presented at trial, there is no reasonable possibility that the trial court's error could have contributed to the verdict. ***Id.***

Manzoor next asserts that the trial court erred in ordering PennDOT to place a lien on his vehicle to satisfy his fines and costs. He asserts that: (1) there was no nexus between the crime committed and the vehicle; (2) he was given no notice of the alleged forfeiture; and (3) section 9754 of the Sentencing Code does not authorize forfeiture as a condition of probation. In support of his argument, he cites ***Commonwealth v. Crosby***, 568 A.2d 233 (Pa. Super. 1990), in which this Court held, in part, that forfeiture of a truck was not a permissible condition of probation. Manzoor is entitled to no relief.

Contrary to Manzoor's contention, the trial court did not order Manzoor to forfeit his vehicle. Rather, as part of Manzoor's direct sentence, ***see*** 18 Pa.C.S.A. § 1106,[4] the trial court imposed restitution in the amount of

---

[4] Section 1106 provides for the imposition of restitution as follows:

(a) General rule.--Upon conviction for any crime wherein:

$117,666 to AMI and in the amount of $2,355.10 to the Susquehanna Firemen's Fund.[5] The court further ordered that a lien be placed upon his vehicle, in favor of the Dauphin County Bureau of Fines and Costs, and directed that "[a]ny proceeds of the sale of this vehicle are to be paid towards costs, fines, and restitution." Trial Court Order, 3/1/17. Section 9728 of the Sentencing Code (Collection of restitution, reparation, fees, costs, fines and penalties) specifically provides that "[t]he total amount for which the person is liable pursuant to this section *may be entered as a judgment upon the person or the property of the person sentenced or ordered*, regardless of whether the amount has been ordered to be paid in installments." 42 Pa.C.S.A. § 9728(b)(4) (emphasis added). Accordingly, the trial court did not err in ordering that a lien be placed on Manzoor's vehicle.

Finally, Manzoor asserts that trial counsel was ineffective for failing to secure proper character testimony. Specifically, Manzoor asserts that the character testimony elicited at trial was improper, as the witnesses' accounts

---

(1) property of a victim has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime; . . .

the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.

18 Pa.C.S.A. § 1106(a). Although, here, the court imposed restitution as part of Manzoor's direct sentence, restitution may also be imposed as a condition of probation. *See* 42 Pa.C.S.A. § 9754(c)(8) (court may impose as condition of probation that defendant make restitution of fruits of his crime or make reparations for loss or damage caused thereby).

[5] The court also imposed fines and costs.

- 17 -

were "that of their own opinion, and not of the community's opinion" as the law requires. Brief of Appellant, at 26. Manzoor is entitled to no relief.

Generally, a petitioner should wait to raise claims of counsel's ineffectiveness until collateral review. ***Commonwealth v. Grant***, 813 A.2d 726 (Pa. 2002). There are limited circumstances in which an appellate court may consider allegations of trial counsel's ineffectiveness on direct appeal. ***See Commonwealth v. Holmes***, 79 A.3d 562 (Pa. 2013) (recognizing two exceptions to ***Grant*** deferral rule where (1) appellant demonstrates extraordinary circumstances in which the claim is both apparent from the record and meritorious, such that immediate consideration best serves the interest of justice or (2) appellant raises prolix claims, there is good cause shown, and request is accompanied by a knowing and express waiver of the right to pursue a first PCRA petition). However, neither of the exceptions is present here. Thus, we decline to review Manzoor's ineffectiveness claims, consideration of which must be deferred until collateral review.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 01/11/2019