**COMMONWEALTH OF PENNSYLVANIA,**
Appellee,

v.

**Albert SANCHEZ, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 26, 2004.

Filed April 22, 2004.

Jeffrey C. Marshall, York, for appellant.

Jerome T. Foerster, Assistant District Attorney, Harrisburg, for Commonwealth, appellee.

Before: STEVENS, McCAFFERY, and OLSZEWSKI, JJ.

OLSZEWSKI, J.:

¶ 1 Albert Sanchez (appellant/defendant) appeals his judgment of sentence imposed by the Court of Common Pleas of York County (Cassimatis, S.J.). A jury convicted appellant of insurance fraud (18 Pa. C.S.A. § 4117(a)(3)) and theft by deception

(18 Pa.C.S.A. § 3922(a)(1)). Appellant raises four issues[1] for our review: (1) whether there was sufficient evidence to sustain his convictions for insurance fraud and theft by deception; (2) whether the lower court properly excluded extrinsic evidence offered to impeach a Commonwealth witness; (3) whether the insurance fraud statute is unconstitutional as being impermissibly vague or overbroad; and (4) whether the lower court properly sentenced appellant. We affirm.

¶ 2 The facts[2] of this case begin with the purchase of a Chevrolet Cavalier by appellant. Appellant purchased the car for his friend Kathylin Goodwin because Goodwin was unable to obtain a car loan due to bad credit. While the title and loan for the Cavalier would be in appellant's name, it was understood that Goodwin would make all the car loan payments because the car was primarily for Goodwin's use. Goodwin subsequently moved to Maryland.

¶ 3 On January 21, 2000, Goodwin was driving back to Pennsylvania and, due to icy road conditions, lost control of the Cavalier and hit a tree. She called her parents and had the car towed to Diehl Autobody. Once the car arrived at Diehl, she told a Diehl employee that the car did not have insurance[3] and, therefore, the car was not to be touched.

¶ 4 Soon after the accident, appellant and Goodwin moved into 1144 East Philadelphia Street in York, Pennsylvania. On January 28, Goodwin told appellant about the accident. Soon thereafter, appellant moved in with his mother to ease his commute to work.

---

1. Appellant withdrew a fifth issue regarding jurisdiction.

2. At the outset, we note that the trial testimony does not indicate dates for all events.

3. The Cavalier was originally insured by Allstate; however, the Allstate policy lapsed and at the time of the accident, the car was uninsured.

¶ 5 Appellant testified that Goodwin asked him several times to reinsure the Cavalier in order for a claim to be made on the car "so that it would get paid off." N.T., 1/16/2003, at 119. He testified that he refused Goodwin's requests.

¶ 6 On February 25, appellant returned to the York residence. Appellant received a tax return check, and appellant and Goodwin decided to purchase another car with the money. They chose to purchase a Dodge Raider (generally referred to by the parties as a jeep). Before the transaction could be completed, insurance needed to be secured for the car. Therefore, insurance was obtained through AIG Specialty Auto. Originally, only Goodwin's name appeared on the insurance policy. Goodwin's name also appeared as the sole owner on the title for the Dodge.

¶ 7 A few days later, appellant's name was added to the insurance policy as an additional driver. It is unclear whether appellant called AIG personally or whether Goodwin called AIG to add appellant's name to the policy.

¶ 8 Around the same time, the Cavalier was also placed on the AIG policy. Once again, it is unclear who placed the Cavalier on the policy. Both appellant and Goodwin deny having added appellant's name or the Cavalier to the AIG policy.

¶ 9 The Cavalier was eventually towed to Goodwin's mother's house (next door to the appellant/Goodwin residence). After being parked in the mother's backyard, the car was towed to Automotive Services Body Shop, supposedly for a damage estimate. Appellant handed Karen Randolph, the tow truck owner, the keys to the Ca-

valier immediately prior to the tow. Appellant, Goodwin, and Ken Stambaugh (Goodwin's ex-boyfriend and housemate of Goodwin and appellant) then went to Automotive Services for the estimate, and Automotive Services requested the insurance card. After the card was given to Automotive Services, Stambaugh became angry, presumably at the fact that the Cavalier, which had been wrecked, was once again insured.

¶ 10 On March 23, 2000, an insurance claim was filed with AIG on the Cavalier. The claim form indicated that the damage was the result of an accident on March 17, 2000, where Goodwin "cut [a] corner short and hit [a] pole." N.T., 1/15/2003, at 92–93, 94. After AIG determined that the car was "totaled", it required that appellant (the registered owner of the car) sign a power of attorney and an odometer statement in order to finalize the claim and to permit Consumer Finance Company (through which appellant secured the auto loan) to release the car to AIG.

¶ 11 The phone call with AIG regarding these forms is severely in dispute. The call occurred via a TTY telephone and a relay service due to Goodwin's and appellant's hearing impairments.[4] It is clear that AIG called Goodwin to obtain the power or attorney and odometer statement. What is unclear is whether appellant ever spoke with AIG. Appellant testified that he never spoke with a representative of AIG regarding a claim on the Cavalier, and that it was Goodwin who told him that the forms were needed "so that we could throw away the car." N.T., 1/16/2003, at 93. Conversely, Good-

---

4. The TTY/relay system required the AIG representative to call a relay service. The relay service would then communicate with Goodwin/appellant through a TTY telephone. A TTY telephone allows users to converse via a keyboard. Essentially, the relay service served as an intermediary between the AIG representative and Goodwin/appellant. The AIG representative primarily spoke to the relay service intermediary and not directly to Goodwin or appellant.

win testified that appellant returned home while she was on the TTY telephone with AIG, and that appellant took over talking to the AIG representative on the TTY telephone. Regardless of who actually conversed with the AIG representative, AIG communicated to appellant or Goodwin that forms needed to be signed regarding the Cavalier, and appellant ultimately completed and signed the appropriate forms.

¶ 12 After appellant signed and completed the odometer statement and the power of attorney form, Consumer Finance released the car to AIG upon receipt of $7,730.90 (the amount of debt outstanding on the loan).

¶ 13 Soon after the claim had been completed, Ken Stambaugh reported the deception to the AIG insurance agent. He essentially told the agent that the accident occurred in January, before the AIG policy became effective.

¶ 14 As a result of this conversation, AIG initiated an investigation into the claim in June 2000. Pierre Khoury, the AIG investigator, testified that neither Goodwin nor appellant would give statements regarding the accident. AIG ultimately concluded that the accident occurred before their coverage of the Cavalier began and, therefore, took steps to recover its money. It did obtain most of the $7,730.90 from Consumer Finance, but it has not obtained any costs associated with the investigation of the claim.

■■■ ¶ 15 Appellant first argues that his convictions were not supported by sufficient evidence. The standard of review for sufficiency of the evidence claims is well settled.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at tri-

al in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof or proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Lehman*, 820 A.2d 766, 772 (Pa.Super.2003) (citations omitted). While there is a great deal of contradictory testimony in this case, we are constrained to resolve all conflicts in favor of the Commonwealth. In so doing, we are compelled to find that appellant's convictions were supported by sufficient evidence.

■■■ ¶ 16 For a defendant to be convicted of insurance fraud, he must

> Knowingly and with the intent to defraud any insurer...assist[ ], abet[ ], solicit[ ] or conspire[ ] with another to prepare or make any statement that is intended to be presented to any insurer...in connection with, or in support of, a claim that contains any false, in-

complete or misleading information concerning any fact or thing material to the claim, including information which documents or supports an amount claimed in excess of the actual loss sustained by the claimant.

18 Pa.C.S.A. § 4117(a)(3). In the light most favorable to the Commonwealth, appellant knew that Goodwin wanted to make an insurance claim on the Cavalier, and at the time of the accident the car was not insured. He admitted that he knew of the scheme when he testified that Goodwin asked appellant in February to obtain insurance on the Cavalier to pay off the car loan. Further, appellant spoke with the AIG representative about the Cavalier and, therefore, knew that a claim was made on the Cavalier. Finally, appellant prepared and signed the odometer statement and power of attorney form in support of the claim. These facts are sufficient to establish that appellant committed the crime of insurance fraud.

■ ¶ 17 For a defendant to be convicted of theft by deception, he must "intentionally obtain[ ] or withhold[ ] property of another by deception." 18 Pa.C.S.A. § 3922(a). Deception is defined as intentionally creating or reinforcing a false impression. 18 Pa.C.S.A. § 3922(a)(1). The Commonwealth must also show that the victim relied on the false impression created or reinforced by the defendant. *Commonwealth v. Imes*, 424 Pa.Super. 633, 623 A.2d 859, 862 (1993). Once again, in the light most favorable to the Commonwealth, appellant obtained from the insurance company $7,730.90 as the result of the

filing of a false insurance claim. He then used this money to pay off his car loan.[5] And while it is uncertain who actually made the original claim, appellant reinforced the false impression stated in the claim by discussing the claim with the AIG representative and preparing and signing the power of attorney form and the odometer statement. AIG relied upon the deception because, upon determining that the accident occurred before the policy went into effect, it took measures to reclaim its lost money. We believe these facts sufficiently prove theft by deception.

■ ¶ 18 We next move to appellant's contention that the lower court erred in prohibiting various documents from being admitted into evidence at trial. He claims that these documents are admissible under Rule 406 of the Pennsylvania Rules of Evidence. Specifically, appellant challenges the inadmissibility of defense exhibits numbered 6 through 12, inclusive. Exhibits 6 and 7 are forged checks (and accompanying affidavits). Exhibits 8, 9, and 10 are letters from a collection agency attempting to collect various overdue debts in appellant's name. Exhibit 11 is a copy of an envelope (presumably a bill) addressed to Kandise Stambaugh at appellant's mother's residence. Finally, Exhibit 12 is a letter from a collection agency addressed to Kandise Stambaugh at appellant's mother's residence. Appellant argues that these documents are admissible as habit evidence to show that Goodwin engaged in a regular course of conduct of forging documents and using other people's names.[6]

---

5. While it is true that appellant never physically or personally saw any money, the insurance company was acting on appellant's behalf when it gave Consumer Finance $7,730.90 (the amount outstanding on the car loan). This situation is no different from one where an insurance company pays its customer directly and the customer personally pays off a car loan with the insurance money.

6. Appellant also argued at trial that the documents are proper impeachment as to Goodwin's capacity for truthfulness. Appellant does not argue this issue on appeal.

¶ 19 The lower court ruled these documents inadmissible based upon Rule 608(b)(1), which states that "the character of a witness for truthfulness may not be attacked or supported by cross-examination or extrinsic evidence concerning specific instances of the witness' conduct". Pa.R.E. 608(b)(1). The trial court also noted that a number of the documents are not even connected to Goodwin on their face. *See* N.T., 1/16/2003, at 4–11.

■ ¶ 20 Appellant's argument that these exhibits are admissible as habit evidence, while creative, is unpersuasive. Our standard and scope of review is well settled.

An appellate court may reverse a trial court's ruling regarding the admissibility of evidence only upon a showing that the trial court abused its discretion. Because the trial court indicated the reason for its decision our scope of review is limited to an examination of the stated reason.

*Commonwealth v. Horvath,* 781 A.2d 1243, 1246 (Pa.Super.2001); *Commonwealth v. Minerd,* 562 Pa. 46, 753 A.2d 225, 229 (2000).

¶ 21 While appellant agrees that the evidence would be inadmissible under Rule 608, he argues that notwithstanding Rule 608, Rule 406 permits the admission of the evidence. Rule 406 permits a party to introduce habit evidence.

Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

Pa.R.E. 406.

[E]vidence of a course of conduct or dealing followed by a person may be admitted to prove that he acted in accordance with it on a given occasion, provided such a course of conduct or dealing is shown to have been *continuous and systematic.*

*General Equipment Manufacturers v. Westfield Insurance Co.,* 430 Pa.Super. 526, 635 A.2d 173, 185 (1993) (citations omitted and emphasis added).

¶ 22 We do not believe that appellant's proffered evidence establishes "continuous and systematic" conduct on the part Goodwin. Exhibits 8, 9, 10, 11, and 12 do not indicate that Goodwin set up the accounts in the names of others. And while Exhibits 6 and 7 do implicate Goodwin, we note that two instances of forgery do not rise to the level of "continuous and systematic" conduct.

¶ 23 We further note that admissible habit evidence is frequently conduct involving mundane matters. *See* Pa.R.E. 406 official comment. Certainly, forgery is not a mundane matter.

¶ 24 We therefore conclude that appellant's exhibits would not have been admissible under Rule 406. It follows that the trial court did not abuse its discretion when it excluded the exhibits.

¶ 25 Appellant next contends that the insurance fraud statute is void for vagueness and overbroad and, therefore, the statute is unconstitutional. We disagree.

¶ 26 We begin with the premise that statutes are presumed to be constitutional "and will not be declared unconstitutional unless it 'clearly, palpably and plainly' violates the Constitution." *Commonwealth v. Craven,* 572 Pa. 431, 817 A.2d 451, 454 (2003) (citations omitted).

¶ 27 Appellant first points to *Commonwealth v. Pozza,* 750 A.2d 889, 893 (Pa.Super.2000), where we held that 18 Pa.C.S.A. § 4117(a)(2) was constitutional and not impermissibly vague. He argues that we

should distinguish and not apply *Pozza* because the facts of *Pozza* are substantially different from the facts of the instant case. Appellant is correct that *Pozza* does not apply in the instant case, although not for his proffered rationale. *Pozza* found that 18 Pa.C.S.A. § 4117(a)(*2*) was not vague. Appellant, however, was convicted under 18 Pa.C.S.A. § 4117(a)(*3*). We did not discuss the constitutionality of section 4117(a)(3) in *Pozza*. We therefore must independently determine whether this section is void-for-vagueness.

¶ 28 Our Supreme Court recently described the void-for-vagueness doctrine.

"The terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties ... [A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process law."

"The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."

Due process is satisfied if the statute provides reasonable standards by which a person may gauge his future conduct.

*Commonwealth v. Mayfield*, 574 Pa. 460, 832 A.2d 418, 422 (2003) (citations omitted).

¶ 29 We believe that section 4117(a)(3) is not vague and is thus constitutional. For a defendant to be convicted of insurance fraud, he must

Knowingly and with the intent to defraud any insurer or self-insured, assist[ ], abet[ ], solicit[ ] or conspire[ ] with another to prepare or make any statement that is intended to be presented to any insurer or self-insured in connection with, or in support of, a claim that contains any false, incomplete or misleading information concerning any fact or thing material to the claim, including information which documents or supports an amount claimed in excess of the actual loss sustained by the claimant.

18 Pa.C.S.A. § 4117(a)(3). This statute clearly defines what is prohibited and does not require a reasonable person to guess at the statute's meaning and application.

¶ 30 Similarly, the statute is not overly broad.

A statute is overbroad if by its reach it punishes a substantial amount of constitutionally-protected conduct. If the overbreadth of the statute is substantial, judged in relation to its legitimate sweep, it may not be enforced against anyone until it is narrowed to reach only unprotected activity. The function of overbreadth adjudication, however, attenuates as the prohibited behavior moves from pure speech towards conduct, where the conduct falls within the scope of otherwise valid criminal laws that reflect legitimate state interests.

*Mayfield*, 832 A.2d at 425 (citation omitted).

¶ 31 Appellant argues that the statute is overly broad because it criminalizes the protected acts of completing an odometer statement and a power of attorney form. While completing an odometer statement and a power of attorney form is generally innocent and arguably protected, section 4117(a)(3) requires much more. The statute requires that a person, *inter alia*, support a materially false claim and have the

intent to defraud. The mere completion of an odometer statement or power of attorney form would not be prohibited under the statute. Only such statements or forms as are filed with the intent to defraud and in connection with a false claim are prohibited. Accordingly, we believe that 18 Pa.C.S.A. § 4117(a)(3) is not overly broad as it does not criminalize protected activity.

¶ 32 Appellant finally argues that his sentence was illegal because the court relied on an "improper grading of the theft offense and [an] improper prior record score." Appellant's Brief, at 22.

■ ¶ 33 Appellant waived his argument regarding the calculation of his prior record score under the sentencing guidelines. "[A]ny misapplication of the Sentencing Guidelines constitutes a challenge to the discretionary aspects of sentence." *Commonwealth v. Archer*, 722 A.2d 203, 211 (Pa.Super.1998). Appellant failed to include in his brief a statement setting forth reasons for allowance of appeal required by Pa.R.A.P. 2119(f). *See also Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987). Accordingly, we find this issue waived. Pa.R.A.P. 2101.

■ ¶ 34 Appellant's argument that the lower court improperly graded the theft by deception offense is, however, properly before us because such an argument goes to the legality of the sentence, not the discretionary aspects of the sentence. Such issues are non-waivable. *Commonwealth v. Passarelli*, 789 A.2d 708, 714 (Pa.Super.2001) (citing *Common-*

*wealth v. Kisner*, 736 A.2d 672, 673–74 (Pa.Super.1999)).

■ ¶ 35 A theft offense is graded a third-degree felony when the amount involved exceeds $2,000. 18 Pa.C.S.A. § 3903(A.1). Otherwise,[7] the offense is graded as a first-degree misdemeanor. 18 Pa.C.S.A. § 3903(b). Appellant argues that the amount involved is either $272[8] or $500[9]. The Commonwealth argues that the amount involved is well over $2,000 (and in fact is over $7,000). We agree with the Commonwealth.

¶ 36 When determining the amount involved, we must take "the market value of the property at the time and place of the crime." 18 Pa.C.S.A. § 3903(c)(1). The crime was completed at the moment AIG paid the false insurance claim. The fact that Consumer Finance (the recipient of the funds resulting from the false claim) ultimately returned the money to AIG is of no moment. The amount ultimately lost by AIG was not the amount taken at the time and place of the crime. We therefore find that the lower court properly graded the theft by deception offense as a third-degree felony.

CONCLUSION

¶ 37 Based upon the above analysis, we find that (1) there was sufficient evidence to sustain appellant's convictions for insurance fraud and theft by deception; (2) the lower court properly excluded evidence proffered by appellant; (3) the insurance fraud statute is constitutional; and (4) the lower court properly graded the offense of theft by deception. We therefore affirm appellant's judgment of sentence.

---

**7.** Section 3903 contains other provisions for the grading of a theft offense. These provisions are not raised by the facts of this case or by appellant.

**8.** This figure is the difference between the amount paid by AIG to Consumer Finance

($7,730.90) and returned to AIG by Consumer Finance ($7,458.90).

**9.** This figure is the insurance deductible lost by AIG.

¶ 38   Judgment   of   sentence   AF-FIRMED.