J-A09020-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                    :           PENNSYLVANIA
                                    :
               v.                      :
                                    :
                                    :
TERRY LEE KOVER                  :
                                    :
          Appellant            :      No. 689 WDA 2019

Appeal from the Judgment of Sentence Entered April 4, 2019
In the Court of Common Pleas of Washington County Criminal Division at
No(s):  CP-63-CR-0000444-2018

BEFORE:  SHOGAN, J., MURRAY, J., and STRASSBURGER, J.[*]

MEMORANDUM BY MURRAY, J.:                  **FILED APRIL 14, 2020**

Terry Lee Kover (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of theft by unlawful taking, receiving stolen property, and criminal trespass.[1]  Appellant challenges the sufficiency of the evidence supporting his convictions and the sufficiency of the evidence to support the grading of the theft related offenses as third-degree felonies. After careful review, we affirm.

On November 6, 2017, John Steiminger observed Appellant "taking a washing machine out of his father's yard" and placing it into a white SUV. N.T., 1/8/19, at 31.  Mr. Steiminger indicated that his attention was drawn to the SUV due to the volume of noise the vehicle was making.  *Id.* at 33.  The

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3921(a), 3925(a) and 3503(a)(1)(ii).

next day, November 7, 2017, Mr. Steiminger observed the same washing machine in the driveway of the home of John Collier, Mr. Steiminger's neighbor. *Id.* at 34. In order to observe Appellant from a better vantage point, Mr. Steiminger proceeded from his residence to a greenhouse located on his property. *Id.* at 43. Mr. Steiminger did this because he "suspected something was going on with [Appellant], because why else would he have went down around there and down in the alley with that vehicle and that washing machine was in [Mr. Collier's] parking place." *Id.* at 44.

From inside his greenhouse, Mr. Steiminger observed Appellant "taking some long [metal] things outside [Mr. Collier's] shed." *Id.* at 45. He indicated there was "a stack of them . . . piled up" outside of the shed. *Id.* at 45-46. Mr. Steiminger testified, "I seen him take one and put it in his vehicle, at least one. He might have had a couple of them together, I'm not sure." *Id.* at 47. Mr. Steiminger then observed Appellant enter the shed and remove a "goofy looking" metal object. *Id.* at 49. Mr. Steiminger recalled Appellant also placing this item in his SUV. *Id.* He stated:

> I seen him go from the long things outside to there and then I seen him go inside and take things and put it in [the SUV]. And by then, I guess he figured he had enough to make one load to whatever he was going to do with it and closed the shed door up.

*Id.* at 50. Mr. Steiminger indicated that "the whole pile was gone at the end." *Id.* at 47. He further testified that he had never observed Mr. Collier's shed open "until this day when the stuff was being taken." *Id.* at 50.

The trial court recounted Mr. Collier's testimony:

Mr. Collier stated that he has owned [his residence] since 2003. However, he stated that his father had a stroke in 2015, and since then, he has been living with his parents to help take care of his father. He indicated that he would return to the [ ] residence "at least once a month just to grab up all [his] mail and that he would often return in the summertime and fall to manage the property and mow the lawn. Mr. Collier indicated that he "built the shed" on his property "probably seven years ago." He stated that "[t]here is a latch with a lock, Master padlock" on the door of the shed and that he has a key to the lock. Mr. Collier explained that his shed was "completely filled with tools" because he excavates "in-ground swimming pools in the summertime." Mr. Collier indicated that he went to his shed whenever he "needed tools." Regarding the alleyway located behind his residence, Mr. Collier confirmed Mr. Steiminger's earlier testimony and indicated that he would travel on the alleyway whenever he made his monthly visit to the nearby post office. Furthermore, Mr. Collier stated: "nobody drives up and down that alley."

On December 1 or 2, 2017, Mr. Collier stated he went to the shed to retrieve an "auger attachment" for purposes of "[b]oring holes in the ground" for fence posts on his parents' property. When he arrived, he noticed that the door was "blown wide open" and that the lock was "smashed." Regarding the lock's location, Mr. Collier stated that "part of it was dangling like on the building itself, not on the door." A number of items were missing from inside and around the shed.

Trial Court Opinion, 6/27/19, at 7-8.

Following trial on January 8, 2019, the jury convicted Appellant of the aforementioned crimes. The jury also found the value of the stolen property to be more than $2,000 but less than $100,000. *Id.* at 2. On April 4, 2019, the trial court sentenced Appellant to an aggregate term of two to four years of prison, plus four years of probation. This appeal followed. Both the trial court and Appellant have complied with Rule of Appellate Procedure 1925.

Appellant raises two issues for our review:

1. Was there sufficient evidence to convict the Appellant of Theft by Unlawful Taking, Receiving Stolen Property, and Criminal Trespass?

2. Was there sufficient evidence as to [the] value of items claimed to be stolen?

Appellant's Brief at 9.

Appellant's first issue challenges the sufficiency of the evidence supporting his three convictions. Our standard of review is well settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Reed*, 216 A.3d 1114, 1119 (Pa. Super. 2019) (quoting *Commonwealth v. Brown*, 186 A.3d 985, 990-91 (Pa. Super. 2018)).

With regard to criminal trespass and unlawful taking, Appellant avers the evidence was insufficient to prove that he committed the crimes. In this vein, he asserts that the only evidence the Commonwealth presented "that could possibly link the Appellant to the crimes of theft and criminal trespass

- 4 -

is testimony by Mr. Steiminger that he saw the Appellant on November 7, 2017 with an SUV parked in his father's driveway, neighboring Mr. Collier's property." Appellant's Brief at 16. Appellant contends that this type of circumstantial evidence – a showing of mere presence at the scene of the crime – is insufficient to support his convictions and establish that Appellant was the perpetrator of the crimes. *Id.* at 15. In support, Appellant cites *Commonwealth v. Jones*, 459 A.2d 11 (Pa. Super. 1983), for the proposition that "merely being in the vicinity at the approximate time of a burglary" is insufficient to sustain a conviction. Appellant's Brief at 16 (citing *Jones*, 459 A.2d at 13).

Section 3503 of the Pennsylvania Crimes Code, governing criminal trespass, provides in relevant part as follows:

**(a) Buildings and occupied structures. –**

    (1) A person commits an offense if, knowing that he is not licensed or privileges to do so, he:

        i. enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof; or

        ii. breaks into any building or occupied structure or separately secured or occupied portion thereof

    (2) An offense under paragraph (1)(i) is a felony of the third degree and an offense under paragraph (1)(ii) is a felony of the second degree.

    (3) As used in this subsection:

"Breaks into." To gain entry by force, breaking, intimidation, unauthorized openings of locks, or through an opening not designed for human access.

18 Pa.C.S.A. § 3503(a).

Further, an individual is guilty of theft by unlawful taking when "he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S.A. § 3921(a). "Moveable property" is defined as "property of which location can be changed." 18 Pa.C.S.A. § 3901. Finally, "deprivation" occurs if a person "withhold[s] property of another permanently" or "dispose[s] of the property so as to make it unlikely that the owner will recover it." *Id.*

Instantly, the record revels that Mr. Steiminger witnessed Appellant inside Mr. Collier's shed, remove items from the shed, and place them into an SUV. N.T., 1/8/19, at 45, 47-49. Mr. Collier testified that he did not give Appellant permission to enter his property or to take any of the tools. *Id.* at 110. He further stated that he had inspected the shed prior to the break-in and that it was secured with a master padlock. *Id.* at 98, 114, 116. Mr. Collier discovered the master padlock smashed and mangled after the break-in. *Id.* at 102. Based on the above testimony, we reject Appellant's assertion that the only evidence presented by the Commonwealth showed that Appellant was "merely present" at the scene of the crime. Appellant's Brief at 15-16. Rather, viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, we conclude that sufficient evidence existed for the jury to reasonably infer that Appellant broke into Mr. Collier's

- 6 -

shed by breaking the master padlock with force and removed items from the shed without permission, with the intent of depriving Mr. Collier of his tools.

Appellant also challenges the sufficiency of the evidence for his conviction of receiving stolen property. Despite raising this claim, however, Appellant cites not one case in support of his argument; indeed, he makes no argument at all. Appellant simply asserts that his "conviction for Receiving Stolen Property cannot stand because there was no evidence that Appellant was ever in possession of the stolen tools." Appellant's Brief at 18. This claim is waived for failure to develop it in any meaningful fashion capable of review. *Commonwealth v. Walter*, 966 A.2d 560 (Pa. 2009) (deeming inadequate appellant's single-sentence assertions in the brief).

In his second issue, Appellant claims that the crimes of theft by unlawful taking and receiving stolen property for which he was convicted should have been graded for sentencing purposes as a third-degree misdemeanor, not a third-degree felony. He argues the Commonwealth did not prove beyond a reasonable doubt the value of the property, as Mr. Collier's testimony was "just making guesses as to what the value of the property is," and "[n]o evidence was offered . . . of the condition that any stolen property was in. . . ." Appellant's Brief at 19.

An error in the grading of an offense implicates the legality of sentencing. *Commonwealth v. Sanchez*, 848 A.2d 977, 986 (Pa. Super. 2004). "Such issues are non-waivable." *Id.* (citation omitted). "[T]he determination as to whether the trial court imposed an illegal sentence is a

question of law; our standard of review in cases dealing with questions of law is plenary." ***Commonwealth v. Williams***, 868 A.2d 529, 532 (Pa. Super. 2005) (citation omitted).

Section 3903 of the Crimes Code, "Grading of theft offenses[,]" provides, in relevant part:

> **(a.1) Felony of the third degree.--**Except as provided in subsection (a) or (a.2), theft constitutes a felony of the third degree if the amount involved exceeds $2,000, or if the property stolen is an automobile, airplane, motorcycle, motorboat or other motor-propelled vehicle, or in the case of theft by receiving stolen property, if the receiver is in the business of buying or selling stolen property.
>
> *     *     *
>
> **(b) Other grades.--**Theft not within subsection (a), (a.1) or (a.2), constitutes a misdemeanor of the first degree, except that if the property was not taken from the person or by threat, or in breach of fiduciary obligation, and:
>
>> (1) the amount involved was $50 or more but less than $200 the offense constitutes a misdemeanor of the second degree; or
>>
>> (2) the amount involved was less than $50 the offense constitutes a misdemeanor of the third degree.

18 Pa.C.S.A. § 3903(a.1), (b).

Under Section 3903, theft is presumptively graded as a misdemeanor with the burden placed on the Commonwealth to produce evidence for the fact finder if it seeks to increase the seriousness of the offense for grading purposes. ***Commonwealth v. Dodge***, 599 A.2d 668, 672 (Pa. Super. 1991). When the Commonwealth fails to present sufficient evidence of the value of the property, we presume that the value is less than fifty dollars, and

therefore, the theft offense cannot be graded any higher than a misdemeanor of the third degree. *Id.* at 672; *see also* 18 Pa.C.S.A. § 1104(3) (maximum allowable sentence for third-degree misdemeanors is one year of incarceration).

Here, the Commonwealth established, through Mr. Collier's testimony, that the value of the stolen property was approximately $7,000. *See* N.T., 1/8/19, at 115. Appellant argues, however, that Mr. Collier was "just making guesses" as to the value of the property. We disagree.

Mr. Collier testified at length about the value of the stolen items:

[The Commonwealth]: So you had 10 foot steel studs and you had, roughly, 20 of them?

[Mr. Collier]: Yes.

\* \* \*

[The Commonwealth]: Okay. Do you know the approximate values for those?

[Mr. Collier]: They are about $8 a linear foot for 10 gauge studs.

[The Commonwealth]: You priced those before?

[Mr. Collier]: Yep.

[The Commonwealth]: So $8, you said, a foot?

[Mr. Collier]: Yeah. So they were about 80 bucks apiece for a 10 footer. If there's 20 of them, that's $1,600 just in structural steel.

\* \* \*

[The Commonwealth]: What else did you notice was missing?

[Mr. Collier]: Then I walked to the shed, I noticed first thing, I have a rototiller, it's a walker-behind. . . .

*　　*　　*

[The Commonwealth]: How much was your rototiller worth?

[Mr. Collier]: They are about $1,000.

[The Commonwealth]: Okay. You priced out similar models to your rototiller?

[Mr. Collier]: Yeah.

[The Commonwealth]: Did you notice anything else missing? I know initially you said you went there for your auger bit. Was that there?

[Mr. Collier]: No. It was gone, too.

[The Commonwealth]: This was a three foot auger bit?

[Mr. Collier]: Yes.

[The Commonwealth]: How much do you think that's worth?

[Mr. Collier]: 400 bucks, something like that.

[The Commonwealth]: Did you notice anything else missing?

[Mr. Collier]: My generator was gone.

[The Commonwealth]: Generator. Okay.

[Mr. Collier]: I had a small, like, compact Honda generator. That's about a thousand bucks for that.

[The Commonwealth]: Did you notice anything else missing?

[Mr. Collier]: Yeah. I had a bull float in there.

*　　*　　*

[The Commonwealth]: How much is a bull float worth?

[Mr. Collier]: Between that and my extension poles and all that, I probably had about a grand in that stuff with my edgers. I had brass edgers, brass joiners, mag floats, Fresno trowels, you know. So all my concrete stuff was gone.

* * *

[The Commonwealth]: Did you notice anything else missing?

[Mr. Collier]: I had some sump pumps there, Zoller sump pumps. I had three of them.

[The Commonwealth]: Three sump pumps?

[Mr. Collier]: Yeah. They are pretty expensive. They are probably 250 apiece, I bet, maybe 300 apiece.

[The Commonwealth]: Anything else?

[Mr. Collier]: I had some aluminum stakes that whenever I do above ground swimming pools, I am required to haul sand sometimes. . . .

[The Commonwealth]: How much were your aluminum stakes worth?

[Mr. Collier]: They were probably about $125 apiece, something like that.

[The Commonwealth]: All right. Did you notice anything else missing?

THE COURT: How many stakes did you have?

[Mr. Collier]: Four of them[.]

THE COURT: And they were $125 each?

[Mr. Collier]: Yeah, probably.

THE COURT: So about $500?

[Mr. Collier]: Yep. . . .

* * *

[The Commonwealth]: Was your shed completely cleared out of items or were there still things left behind?

[Mr. Collier]: Like rakes were there. Like little hand tools, like shovels weren't gone. The hoses for my pneumatic guns, which were in my basement, like I have an air hose like you hook on a big compressor and run a jackhammer. They were there. Gas cans were left. Like stuff that was really - - that bumper, that bent up bumper was still in there.

[The Commonwealth]: Some stuff was left behind?

[Mr. Collier]: Yes.

[The Commonwealth]: Would you characterize that as more expensive or less expensive stuff left behind?

[Mr. Collier]: Oh, yeah, stuff you – I mean, you can't really sell a gas can to anybody. It would be nice to have a couple around your house, but not like high ticket items where people would want them.

* * *

[The Commonwealth]: I know you gave estimates to each individual piece of property.

[Mr. Collier]: Uh-huh.

[The Commonwealth]: If you had to estimate like a sort of grand total, a conservative estimate, maybe on the lower end?

[Mr. Collier]: Probably like seven grand, something like that.

[The Commonwealth]: Seven would be like the low end?

[Mr. Collier]: Yes.

N.T., 1/8/10, at 103-10, 115.

Based on the foregoing, the evidence was sufficient to prove that the value of the stolen property exceeded $2,000 for purposes of grading Appellant's convictions as a third-degree felony.  ***See*** 18 Pa.C.S.A. § 3903(a.1).  The Commonwealth presented ample testimony to establish that the value of the property exceeded $2,000, and Appellant never refuted that testimony.  ***See id.*** at 116-25.  Therefore, we conclude that Appellant's offenses were graded properly as third-degree felonies, and he is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/14/2020

- 13 -