J-S23013-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TIMOTHY D. BOZEK | |
| Appellant | No. 1220 MDA 2021 |

Appeal from the Judgment of Sentence Entered August 17, 2021
In the Court of Common Pleas of Luzerne County
Criminal Division at No.: CP-40-CR-0002917-2014

BEFORE: STABILE, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY STABILE, J.:        **FILED: NOVEMBER 22, 2022**

Appellant Timothy D. Bozek appeals from the August 17, 2021 judgment of sentence entered in the Court of Common Pleas of Luzerne County ("trial court") following the revocation of his special probation for failure to obtain approved housing. After careful review, we affirm.

Unless otherwise specified, the facts of this case come from the trial court's November 19, 2021 opinion. **See** Trial Court Opinion, 11/19/21, at 2-9. On May 19, 2015, following a jury trial, Appellant was convicted of ten counts of sexual abuse of children—possession of child pornography and one count of criminal use of a communication facility.[1] On August 14, 2015, the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6312(d) and 7512(a), respectively.

trial court sentenced Appellant to an aggregate term of 30 to 60 months' imprisonment for possession of child pornography followed by five years' probation for criminal use of a communication facility. The trial court also ordered Appellant to register for life as sexual offender under the Sexual Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S.A. §§ 9799.10-9799.41. On May 13, 2021, Appellant's five-year maximum term of incarceration expired.

However, via a letter dated May 10, 2021, a few days before Appellant's maximum term expired, the Pennsylvania Parole Board (the "Board") requested that the trial court hold a status conference and issue a detainer because Appellant did not have an approved residence or home plan. The letter stated in relevant part:

> On May 13, 2021, the Scranton District Office received the above named offender, from the Parole Staff at SCI Rockview, following the offender reaching his maximum expiration of sentence on May 13, 2021. He has a five-year special probation imposed by Your Honor.
>
> At the current time, [Appellant] has no approved residence, and is a registered sex offender who will be homeless.
>
> The Board is requesting, that a detainer be lodged against [him] and that a status hearing be scheduled in order to address [Appellant's] **homelessness**. It should be noted that [Appellant] has an extensive mental health history requiring intensive monitoring and poses a significant risk to public.

Letter, May 10, 2021, at 1 (sic) (emphasis added). The Board was concerned that, as a registered sex offender, Appellant would be homeless upon his release from prison.

Additionally, Appellant has serious health issues. While in prison, his physical and mental condition deteriorated to the point where he could not walk, used a wheelchair, wore adult diapers and could not hear clearly. Considering his health conditions, the Board deemed it critical for him to have appropriate housing upon his release.

Seemingly agreeing with the Board's request,[2] the trial court issued a detainer pursuant to which Appellant was moved to Luzerne County Correctional Facility ("LCCF") upon his release from prison on May 13, 2021.[3] As a result, Appellant commenced his term of probation at LCCF.

On May 19, 2021, as per the Board's request, the trial court held a status conference,[4] at the start of which Appellant complained that the Board would not "let [him] go live [with his] friends" or "find a home to live [in]." N.T., Hearing, 5/19/21, at 4.-5. Appellant explained that he had a friend that he could go live with, but that he did not know this friend's address. *Id.* at 5. According to Appellant, this friend lived in either Dallas or Trucksville and that he knew how to get to the residence. *Id.* ("I know at the light you turn left, go up the top of the hill and make a right."). When asked, Appellant testified that his friends' name was Maribel and Ennio Badilla. *Id.* He further testified

_____

[2] The record is silent on whether, prior to or concurrently with the Board's request for a detainer, Appellant was notified that he violated a condition of probation.

[3] Because Appellant does not challenge the trial court's authority to *ex parte* issue a detainer in the absence of a probation violation, technical or otherwise, we decline to examine the propriety of the trial court's action in this regard.

[4] At this hearing, the witnesses were not sworn in or placed under oath.

that he believed Ennio was affiliated with Badilla Construction, a roofing company. *Id.* Appellant also conceded that he had not spoken with his friends in over six years and did not know their phone number. *Id.* at 8-9, 13-14.

With respect to nursing home placement, Appellant was adamant that he did not want to go to a nursing home or personal care home because they would take his Social Security payments. *Id.* at 12. Appellant explained that he owed money to his brother and Badilla and he would not be able to repay them if he were placed in a nursing home. *Id.*

Appellant appeared at the status conference in a decompensated state. He was in a wheelchair and unable to walk without assistance. *Id.* at 15. Appellant is diabetic and lost a toe during his incarceration due to diabetes complications. *Id.* at 16-17. Moreover, Appellant is deaf, wears adult diapers, and cannot not use the bathroom without assistance. When Appellant reported to the Board's office, two agents had to assist him in changing his diaper. *Id.* at 14. Finally, Appellant stated that he was on suicide watch at the LCCF.[5] *Id.* at 18-19.

The Commonwealth presented the testimony of Agent Jeremiah Johnson, State Parole, who testified that the Board requested this hearing to address the issue of Appellant's homelessness and his current health status. *Id.* at 5-6, 11. Agent Johnson testified that the Area Agency on Aging

_____

[5] The record is bereft of any indication whether the Commonwealth considered Appellant eligible for commitment under the Mental Health Procedures Act, 50 P.S. § 7101, *et seq.* in light of his suicidal ideations.

determined that Appellant was qualified for placement in a nursing home. *Id.* According to Agent Johnson, during the last couple of months, while he was incarcerated, Appellant was presented with placement options. *Id.* at 6. Appellant declined all options.

> On numerous occasions he refused to go to those—to any of those locations, refused to sign releases of information so he could be considered for placement in any of those facilities. And he was very combative verbally to each of the social workers when they did try to attempt it.

*Id.* Agent Johnson further testified that the Board spoke with Appellant's brother who indicated that he would arrange for a hotel room for Appellant for only one night. *Id.* at 6-7. The brother was not offering permanent housing or medical assistance. The Board rejected Appellant's proposed home plan involving his brother because the brother was willing to pay for a room for only a single night and because Appellant could not be supervised in a hotel. *Id.* at 7. Agent Johnson explained that because of state conditions prohibiting sex offenders from residing in a building that houses minors and the potential for minors to stay in the same hotel at any given time, the Board determined that a hotel was not a viable home plan. *Id.*

With respect to Maribel and Badilla, Agent Johnson testified that Appellant had not provided any information on these individuals prior to the status conference and an internet search for Badilla construction yielded no results. *Id.* at 10, 13.

According to Agent Johnson, the Board was trying to secure a safe location for Appellant to reside because he is unable to care for himself to the extent that if he were homeless, he would be a harm to himself. *Id.* at 14. Appellant clearly could not maintain his daily life necessities. *Id.*

At the close of the hearing, Appellant's counsel agreed to try to contact Badilla and Appellant's brother to see if they were willing to assist with securing suitable housing and obtaining medical care. *Id.* at 10, 19. Appellant's counsel also indicated that the social workers in the public defender's office had experience in finding housing for individuals with a higher level of need and would assist Appellant in this regard. *Id.* at 17. A follow-up status conference was scheduled for May 28, 2021.

On May 20, 2021, the Board, for the first time, issued a revocation notice to Appellant, alleging technical violations of his special probation. In particular, the Board claimed that Appellant violated, *inter alia*, the second condition of his probation: "Your residence may not be changed without written permission of the parole supervising staff." In support, the Board claimed that Appellant had not submitted a home plan and that he refused possible home plan options offered to him on April 20, April 21, and April 22,

2021, while incarcerated. On May 24, 2021, Appellant waived his *Gagnon I*[6] hearing.

At the May 28 *Gagnon II* hearing, it was determined that the issue of Appellant's lack of suitable housing remained unsolved and his health issues made it virtually impossible for him to live alone. Moreover, Appellant's attorney indicated that she was unable to locate the Badillas and that, although she attempted to contact Appellant's brother, she was unable to speak with him. N.T., Hearing, 5/28/21, at 5, 7. The attorney also confirmed that the social workers from the public defender's office were working on finding Appellant a placement, but that it would likely take more time because of the serious nature of Appellant's needs and his sexual offender registration status. *Id.* at 5.

Next, Agent Johnson testified that the Board was able to contact Appellant's brother and that the brother indicated he did not want anything to do with Appellant. *Id.* at 10-11. Agent Johnson further testified that there were two treatment providers for sexual offenders located in Luzerne County

---

[6] In *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), the Supreme Court determined a two-step procedure was required before parole or probation may be revoked:

> [A] parolee [or probationer] is entitled to two hearings, one a preliminary hearing [*Gagnon I*] at the time of his arrest and detention to determine whether there is probable cause to believe that he has committed a violation of his parole [or probation], and the other a somewhat more comprehensive hearing [*Gagnon II*] prior to the making of a final revocation decision.

*Id.* at 781-82.

and that neither one of them would provide treatment to individuals, such as Appellant, who deny having committed any sexual offenses and assert their innocence. *Id.* at 11, 13.

At the conclusion of the hearing, the trial court continued the revocation hearing to June 25, 2021 to allow the public defender's office additional time to find an appropriate housing for Appellant. On June 21, 2021, the June 25 hearing was rescheduled to June 30, 2021.

At the June 30 hearing, Appellant stated that he was not feeling any better. N.T., Hearing, 6/30/21, at 3. He further stated he needed 48 hours to locate his friends in Trucksville or Dallas. *Id.* at 3-4. When questioned whether he would accept placement at South Hills Rehab or any facility where he would be considered for admission, Appellant answered in the affirmative. *Id.* at 18-19, 25-27.

His attorney stated that, given Appellant's convictions, his registration status, and the higher level of care required for him, the social workers from the public defender's office were not yet able to locate housing for Appellant. *Id.* at 4, 16 ("[W]e have not found anywhere that will accept both the registration status and can provide the level of care. I know we have places that can do one or the other."). Appellant's attorney also stated that she would research South Hills Rehab, a facility initially proposed by the Board and that considered accepting him, but which Appellant refused prior to his release from state prison. *Id.* at 17-18, 22. Appellant's attorney noted on the record that the Department of Corrections and the Area Agency on Aging

contacted numerous nursing homes to find suitable housing for Appellant. *Id.* at 21. However, their efforts were unsuccessful because some of the contacted facilities advised them that they either would not accept Appellant, or that there was no availability. *Id.* The remaining facilities simply failed to respond to the inquiries. *Id.*

Agent Johnson testified that when Appellant was given an opportunity to go to a nursing home, arrangement for which was to be made by the Department of Corrections prior to his release, Appellant refused to do what was then necessary to be considered for placement. *Id.* at 5. He further testified that the Board searched, without success, for the names and locations for individuals who Appellant previously indicated might be able to provide him housing and care. *Id.*

At the conclusion of the hearing, the trial court again continued the revocation hearing to August 17, 2021 to allow additional time to find a suitable placement for Appellant.

At the August 17 hearing, the Commonwealth laid out its basis for seeking the revocation of Appellant's special probation. N.T., Hearing, 8/17/21, 5. In this regard, the Commonwealth reiterated its claim that Appellant committed a technical violation of his probation. *Id.* Specifically, he violated the second condition of his probation, *i.e.*, residence may not be changed without written permission. *Id.* In support, the Commonwealth alleged that Appellant failed to provide a home plan and that he refused to accept possible home plan options offered to him. *Id.* at 5-6. The

- 9 -

Commonwealth noted that to the extent Appellant submitted a home plan, it was rejected because it involved his brother securing a hotel room for him for a single night. *Id.* at 7. Indeed, the brother indicated to the Board that he would not assist Appellant in finding appropriate housing. *Id.* Agent Johnson testified that he was not aware of any facility in this Commonwealth that would accept Appellant. *Id.* at 12-13. Agent Johnson also requested that, upon revocation of Appellant's probation, the trial court make Appellant eligible for immediate parole upon imposing a prison sentence. *Id.* at 15.

> I would state if he could be made immediately eligible for parole by the court so that he may be placed onto parole supervised by the state, not on special probation, at that point we may be able to put him into a facility where he would be able to be in treatment, as well as no longer incarcerated.

*Id.*

Appellant, who appeared at the hearing using a walker, testified that he signed papers to be considered for placement at South Hills Rehab and another facility, but never heard back. *Id.* at 9, 11. Agent Johnson, however, testified that he was unaware of Appellant signing papers. N.T., Hearing, 8/17/21, at 11.

Based on this evidence, the trial court found that Appellant had "[n]o viable options at this point." *Id.* at 13. As a result, the trial court revoked Appellant's special probation for his underlying conviction of criminal use of a communication facility and resentenced him to three months to five years'

incarceration.  ***Id.*** at 16.  The trial court awarded Appellant 96 days' credit for time served from May 13, 2021 until August 17, 2021.  ***Id.*** at 17.

Appellant did not file any post-sentence motions, but filed a timely notice of appeal to this Court.  The trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.  Appellant complied, challenging the trial court's authority to anticipatorily revoke his probation for a technical violation.  In this regard, he asserted that his probation was revoked while he was incarcerated and prior to the commencement of probation.  In response, the trial court issued a Pa.R.A.P. 1925(a) opinion.

On appeal,[7] the crux of Appellant's argument is that the Commonwealth failed to present sufficient evidence to prove that Appellant violated the second condition of his probation.[8]  In other words, Appellant does not

---

[7] "Revocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion." ***Commonwealth v. Smith***, 669 A.2d 1008, 1011 (Pa. 1996).

[8] Insofar as Appellant relies upon ***Commonwealth v. Simmons***, 262 A.3d 512 (Pa. Super. 2021) (*en banc*) to argue that the trial court anticipatorily revoked his probation, the reliance is misplaced because ***Simmons*** is factually distinguishable.  In ***Simmons***, this Court overruled longstanding precedent that allowed courts to anticipatorily revoke probation based on crimes committed while a defendant was on parole.  The Court in ***Simmons*** held that where a court has imposed a sentence of probation to be served consecutive to a term of incarceration and a defendant commits a crime while on parole, the trial court may find only a violation of parole. ***Simmons***, 262 A.3d at 523-27.  The court cannot find an anticipatory violation of probation. ***Id.*** Here, unlike in ***Simmons***, Appellant's probation was not revoked
*(Footnote Continued Next Page)*

challenge any condition of his probation, but merely argues that the evidence was insufficient to prove that he violated the second condition.

A challenge to the sufficiency of the evidence supporting the revocation of probation is a question of law subject to plenary review. *Commonwealth v. Perreault*, 930 A.2d 553, 558 (Pa. Super. 2007), *appeal denied*, 945 A.2d 169 (Pa. 2008). We must determine whether the evidence admitted at the revocation hearing and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth, is sufficient to support the conclusion that the probationer violated the terms of probation. *Id.*

Before the trial court may revoke probation, the court must find, "based on the preponderance of the evidence, that the probationer violated a specific condition of probation or committed a new crime[.]" *Commonwealth v. Parson*, 259 A.3d 1012, 1019 (Pa. Super. 2021) (citations omitted). "Unlike a criminal trial where the burden is upon the Commonwealth to establish all of the requisite elements of the offenses charged beyond a reasonable doubt, at a revocation hearing the Commonwealth need only prove a violation of probation by a preponderance of the evidence." *Commonwealth v. Moriarty*, 180 A.3d 1279, 1286 (Pa. Super. 2018) (citation omitted). As our

_____

anticipatorily. Appellant was released from state prison upon serving his maximum term. Upon release, he was shuttled to LCCF to begin his term of probation. While serving his probationary term, Appellant was slapped with technical violations, which resulted in the revocation of his probation. Simply put, the revocation was not anticipatory as he was on probation.

Supreme Court has explained, "preponderance of the evidence is 'a more likely than not inquiry,' supported by the greater weight of the evidence; something a reasonable person would accept as sufficient to support a decision." ***Commonwealth v. Batts***, 163 A.3d 410, 453 (Pa. 2017) (citations omitted).

With the foregoing principles in mind, and based upon our extensive review of the record, viewed in the light most favorable to the Commonwealth, we cannot agree with Appellant that the Commonwealth failed to present sufficient evidence to establish that he violated the second condition of his probation.[9] Here, as detailed earlier, on May 13, 2021, upon completion of his five-year maximum sentence for multiple counts of possession of child pornography, Appellant was whisked away to LCCF on a detainer issued on the Board's concern that Appellant lacked a home plan and would become homeless upon his release from SCI Rockview.[10] As a result, Appellant commenced his five-year term of special probation at LCCF. During the hearings that followed, it became clear that the Board felt compelled to detain Appellant at LCCF because he simply had nowhere to go and would become homeless if not detained. An ancillary concern was that, given his physical

---

[9] Appellant does not argue that the Commonwealth failed to present any evidence that an approved home plan was a condition of his probation. Nonetheless, we note the record is devoid of any evidence that homelessness, while a basis of the revocation, was a violation of Appellant's probation.

[10] The court suggested that, if not imprisoned, Appellant would either be homeless or fail to properly register under SORNA, resulting in arrest and criminal charges.

and medical conditions, Appellant could not care for himself and, therefore, required placement in a nursing facility.

The trial court noted that, prior to his release from prison, Appellant repeatedly refused to do what was then necessary to be considered for placement in a nursing home. Even after his release, especially during the May 19 status hearing, Appellant was adamant in his refusal to be placed in a nursing home. He reasoned that a nursing home or a personal care home would take his social security payments. Appellant did not want to part with his social security payments because, as he explained, he needed that money to repay debts he owed to his brother and friends. To the extent Appellant claims that he signed papers to be considered for placement, Agent Johnson's testimony directly contradicted Appellant's claim. *See Commonwealth v. Sanchez*, 848 A.2d 977, 982 (Pa. Super. 2004) (in sufficiency of evidence review, conflicts in testimony are resolved in favor of the verdict winner). In *Sanchez*, we noted that "[w]hile there is a great deal of contradictory testimony in this case, we are constrained to resolve all conflicts in favor of the Commonwealth. In so doing, we are compelled to find that appellant's convictions were supported by sufficient evidence." *Id.* Here, the trial court credited Agent Johnson's testimony on this issue, considering that the court found in favor of the Commonwealth and revoked Appellant's probation. Further, his continued denial that he committed any crime rendered him ineligible for placement at two facilities in Luzerne County.

Moreover, Appellant also did not present any viable, non-nursing home options. The trial court found that his brother was not a resource because the brother was willing to put Appellant up in a hotel room for a single night and could not provide or arrange for any medical care for him. Appellant's proposal to live with his friends likewise was not viable because he had not spoken to them in over six years and he did not know their telephone number or where they lived. It was thus solely on the basis of his refusal to be placed in a nursing home and failure to submit any non-nursing home alternatives that the Commonwealth charged Appellant with a technical violation of his probation for failure to submit a suitable home plan. In light of the record evidence, and given the unique circumstances of this case, we are constrained to agree with the trial court that the Commonwealth presented sufficient evidence to prove that Appellant violated the second condition of his probation.

Accordingly, we affirm Appellant's judgment of sentence following revocation of his probation.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/22/2022