J-S11040-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TONY TILLMAN | : | |
| | : | |
| Appellant | : | No. 718 EDA 2023 |

Appeal from the PCRA Order Entered February 23, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006940-2016,
CP-51-CR-0006941-2016

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TONY TILLMAN | : | |
| | : | |
| Appellant | : | No. 2650 EDA 2023 |

Appeal from the PCRA Order Entered February 23, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006941-2016

BEFORE:   BOWES, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED OCTOBER 9, 2024**

Appellant, Tony Tillman, appeals from the denial of his petition filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S. § 9541 *et seq*. ("PCRA"), collaterally challenging his jury convictions of murder in the first degree, carrying a firearm without a license, and possessing an instrument of crime

_____

[*] Retired Senior Judge assigned to the Superior Court.

under Docket No. CP-51-CR-0006940-2016, and of aggravated assault and retaliation against a witness under CP-51-CR-0006941-2016.[1] After review of the record, we affirm the PCRA court's order denying relief.

This Court, in its decision affirming Appellant's judgments of sentence on direct appeal, summarized the record evidence and procedural history as follows:

> Appellant shot and killed Aaron Walker in Philadelphia on the evening of September 18, 2015. Following the murder, Appellant told Roger Pickens, one of Appellant's associates with whom he sold drugs, that Appellant had "f***ed up" because he had dropped his hat at the scene of the shooting. N.T. Trial, 11/2/17, at 55. Police recovered a red fedora from the scene of the shooting. Appellant had been seen wearing a red fedora on the day of the shooting and subsequent DNA testing confirmed that the fedora contained DNA matching Appellant's.
>
> Five days after the shooting, another one of Appellant's associates, Kevin Rideout, was taken into custody for drug-related offenses. At that time, Rideout gave the police information implicating Appellant in the murder of Walker. Rideout was released from custody that same day, and told Pickens that he had given the police information on the shooting. The next day, Appellant met with Pickens, told him he knew about Rideout's statement to the police implicating him in the murder, and said that Rideout "had to go." *Id.*, at 62.
>
> On October 8, 2015, Pickens was on the same block as Rideout when Appellant told Pickens to "clear the block" for his safety. *Id.*, at 64. Afterwards, three men turned the corner onto the block and opened fire on Rideout. Although Rideout sustained six gunshot wounds, he survived. Appellant later told Pickens that Rideout was supposed to be killed.
>
> Pickens was subsequently arrested on drug charges. At that time, he gave a videotaped statement to police implicating Appellant in

---

[1] 18 Pa.C.S. §§ 2502(a), 6106(a)(1), 907(a), 2702(a) and 4953(a), respectively.

the Walker murder and agreed to cooperate with police on the matter.

Four months later, Pickens testified against Appellant at Appellant's preliminary hearing. Following Pickens' release from prison on the unrelated drug charges, he feared for his safety after testifying against Appellant. As a result, the Commonwealth relocated Pickens.

On July 15, 2017, Appellant's and Pickens' drug supplier, Edward Raymond, approached Pickens in the front yard of his relocated residence and told him "I know where you been at … I could have reached out and touched you, but I didn't. I waited. I wanted to give you a chance to make this sh** right." *Id.*, at 88-89. Raymond also told Pickens that he had been to prison to see Appellant, and that Appellant had "told him everything." *Id.*, at 89.

Specifically, Raymond informed Pickens that Appellant told him he knew Pickens had testified against him at his preliminary hearing. *Id.*, at 89. Raymond then retrieved a gun from his vehicle, put it under his shirt, and asked Pickens if he was going to make it right. Pickens fled into his house and heard Raymond tell him "I know where you're at." *Id.*, at 90. Pickens reported this incident, made a statement to the police, and was once again relocated.

Appellant's consolidated jury trial began on October 31, 2017. Prior to trial, Appellant filed a motion *in li*mine seeking to bar Pickens from testifying about Raymond's alleged witness intimidation. Following a hearing, the trial court denied the motion and Pickens was allowed to testify at trial about Raymond's efforts to intimidate him into changing his testimony.

Ultimately, the jury convicted Appellant of first-degree murder, PIC and carrying a firearm without a license in connection with the Walker murder. The jury also convicted Appellant of aggravated assault and retaliation against a witness in connection with the Rideout shooting. The court then sentenced Appellant to an aggregate term of life imprisonment without parole.

*Commonwealth v. Tillman*, Nos. 926 & 927 EDA 2018, 2019 WL 6652087 *1-*2 (Pa. Super., filed Dec. 6, 2019) (non-precedential decision). In the direct appeal, Appellant argued that the trial court erred by allowing Pickens

to testify about Raymond's efforts to intimidate him. In affirming the trial court's ruling, this Court held, *inter alia*, there was "evidence that Appellant was involved in Raymond's efforts to intimidate Pickens into recanting his testimony," ***id.*** at *2, and evidence of a "clear connection" between the shooting of Rideout and "Raymond's visit to Pickens," ***id.*** at *3. Appellant also argued that "the trial court abused its discretion by denying the motion in limine to bar Pickens' testimony about the threats Raymond made to him because such testimony constituted inadmissible hearsay." ***Id.*** This Court agreed with the trial court that Raymond's statements came within the co-conspirator exception to hearsay. ***Id.*** at *4.

Appellant filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court. That petition was denied on June 2, 2020.

On June 2, 2021, Appellant, through counsel, filed the instant PCRA petition. On April 14, 2022, Margeaux Cigainero, Esquire, entered her appearance as new PCRA counsel, and filed an amended petition. The Commonwealth moved to dismiss defendant's PCRA petition on October 7, 2022. On November 29, 2022, Appellant filed a response to the Commonwealth's motion to dismiss. The Honorable Glenn B. Bronson, the trial judge now sitting as the PCRA court, issued notice on January 5, 2023, pursuant to Pa.R.Crim.P. 907 of its intent to dismiss the PCRA petition. No responses were filed, and on February 23, 2023, the PCRA Court dismissed Appellant's petition.

On March 7, 2023, Ms. Cigainero, on behalf of defendant, filed a notice of appeal from the PCRA court's dismissal of the PCRA Petition. However, counsel did not file an ordered Concise Statement of Errors Complained of on Appeal in accordance with Pa.R.A.P. 1925(b). Well after the ordered Statement was due, the PCRA court filed an opinion recommending this Court affirm the dismissal of defendant's PCRA petition based on the complete failure to comply with Rule 1925(b) and transmitted the record to this Court. On May 15, 2023, Ms. Cigainero filed in this Court an application to withdraw her appearance, which was granted on June 6, 2023. We directed the PCRA court to determine if Appellant qualified for appointed counsel. On July 24, 2023, the PCRA Court held the ordered hearing, determined Appellant qualified, and appointed current counsel to represent Appellant.

On September 22, 2023, we remanded in order for newly appointed counsel to file a Concise Statement of Errors Complained of on Appeal and retained jurisdiction. The ordered statement was filed on September 25, 2023, raising three enumerated claims. Newly appointed counsel then requested permission to amend the notice of appeal in order to comply with ***Commonwealth v. Walker***, 185 A.3d 969 (Pa. 2018). By an order entered on October 16, 2023, we directed Appellant to file amended notices, the trial court to accept them and the Prothonotary to open a new appeal docket. After those tasks were completed, and upon application by Appellant, we consolidated the appeals for decision.

In his brief, Appellant limits this appeal to two questions:

1. Did the PCRA court err and was dismissal of Appellant's PCRA Petition without a hearing not supported by the Record and free from legal error because the Commonwealth engaged in discovery violations which prejudiced Appellant when the Commonwealth failed to disclose a pattern of misconduct and habitual racial animus by Officer Jason Seigafuse and Detective James Crone when these individuals were central to the prosecution of African-American Appellant because Officer Seigafuse allegedly recovered an incriminating hat proximate to the homicide scene and the chain of custody was further tainted because this hat was passed from Officer Seigafuse to Detective Crone and Detective Crone, the assigned detective, took numerous statements that were used at trial and, in turn, the non-disclosure also violated Appellant's rights under the Equal Protection Clause to the Fourteenth Amendment because the investigation and subsequent trial were tainted by these officers' pattern of racial animus?

2. Did the PCRA court err and was dismissal of Appellant's PCRA Petition without a hearing not supported by the Record and free from legal error because direct appeal counsel was ineffective and Appellant suffered prejudice due to the fact that direct appeal counsel failed to argue that the trial court erred in admitting the inadmissible and inflammatory hearsay testimony of Roger Pickens and trial counsel was ineffective and Appellant suffered prejudice because trial counsel did not engage in continuous objections in relation to Roger Pickens' continuing inadmissible hearsay testimony?

Appellant's Brief, 4-5.

We review an order denying a PCRA petition to determine whether the PCRA court's decision is supported by the evidence of record and free of legal error. ***Commonwealth v. Brown***, 196 A.3d 130, 150 (Pa. 2018); ***Commonwealth v. Jarosz***, 152 A.3d 344, 350 (Pa. Super. 2016). The PCRA court need not hold an evidentiary hearing if it "can determine from the record that no genuine issues of material fact exist." ***Commonwealth v. McCready***,

295 A.3d 292, 298 (Pa. Super. 2023) (citation omitted). We review the PCRA court's legal conclusions *de novo*. ***Commonwealth v. Spotz***, 18 A.3d 244, 259 (Pa. 2011). "Moreover, it is an appellant's burden to persuade us that the PCRA court erred and that relief is due." ***Commonwealth v. Pridgen***, 305 A.3d 97, 101 (Pa. Super. 2023), ***appeal denied***, 318 A.3d 97 (Pa. 2024).

In the PCRA court, Appellant alleged a lack of disclosure by the Commonwealth with regard to two police officers involved in the investigation, which Appellant described as "relating to severe misconduct" by the officers. Amended Petition, 8-9; Trial Court Record, 337-338. He explicitly based this claim for relief on the "unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced," 42 Pa.C.S. § 9543(a)(2)(vi). Amended Petition, 4; Trial Court Record, 333. Appended to the petition were copies of the alleged social media and office postings that were alleged to demonstrate "severe" police misconduct.

Appellant asserted that the failure to disclose these postings was a violation of ***Brady v. Maryland***, 373 U.S. 83 (1963). ***See*** Appellant's Brief, 11-14. The PCRA court addressed the ***Brady*** claim and found it meritless. We agree with the PCRA court that it is meritless.

The law governing a ***Brady*** claim is well settled:

In ***Brady***, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. The Supreme Court

- 7 -

subsequently held that the duty to disclose such evidence is applicable even if there has been no request by the accused, and that the duty may encompass impeachment evidence as well as directly exculpatory evidence. Furthermore, the prosecution's *Brady* obligation extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution.

*Commonwealth v. Lambert*, 884 A.2d 848, 853-54 (Pa. 2005) (internal citations and quotations omitted). There are three necessary components for a meritorious claim that the Commonwealth violated Appellant's right to due process by failing to disclose *Brady* material: "the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensued." *Commonwealth v. Conforti*, 303 A.3d 715, 726 (Pa. 2023) (quoting *Lambert*, 884 A.2d at 854).

The PCRA court fairly described Appellant's claim:

[Appellant] claims that the Court erred in denying his claim regarding the Commonwealth's failure to disclose "a pattern of misconduct and habitual racial animus by Officer Jason Seigafuse and Detective James Crone," which "tainted" the investigation and trial. Statement of Errors at 11. Defendant, who is African American, argues that Officer Seigafuse and Detective Crone were central to the prosecution of defendant because Officer Seigafuse recovered an incriminating hat near the scene, which he later passed to Detective Crone. *Id.* Additionally, Detective Crone was the assigned detective and took multiple statements used at trial. *Id.* [Appellant] argues that the Commonwealth's failure to disclose an alleged "pattern of misconduct and habitual racial animus" by Officer Seigafuse and Detective Crone violated his rights under the Equal Protection Clause and Fourteenth Amendment. *Id.* This claim is without merit.

…

Here, the evidence proffered by [Appellant] regarding the misconduct of Officer Seigafuse and Detective Crone is not

- 8 -

material. [Appellant] proffered various online posts published by Officer Seigafuse on social media. *See* Amended Petition, Exhibits B-F. One of these posts is a photo of a Philadelphia Police officer testifying in court, which was captioned by Officer Seigafuse with the phrase "[l]ying at court as usual." Amended Petition, Exhibit B. Another is a video posted by Officer Seigafuse of boxer Mike Tyson titled "How You Sound Calling Off of Work." Amended Petition, Exhibit C. Another post by Officer Seigafuse contains a homophobic slur. Amended Petition, Exhibit D. [Appellant] also proffered a post by Officer Seigafuse, made in July of 2012, wherein he states "[w]orking this occupy shit at broad and arch ... should be fun" in an apparent reference to the Occupy Wall Street protest movement. Amended Petition, Exhibit E. [Appellant]also proffered a post by Officer Seigafuse wherein he states that the "Wildwood boardwalk is more ghetto then [sic] north Philly." Amended Petition, Exhibit F. As to Detective Crone, [Appellant] proffered a racially charged letter that Detective Crone wrote to other officers in his unit. Amended Petition, Exhibit K.

[Appellant's] argument that Officer Seigafuse and Detective Crone's "pattern of misconduct and habitual racial animus" is material is unavailing. While [Appellant] argues that the racial animus these officers held tainted the investigation, [Appellant] provided no evidence that the officers engaged in misconduct in [Appellant's] case. The evidence proffered showing Officer Seigafuse used racially charged and homophobic language as well as the evidence showing Detective Crone wrote a racially charged letter would not be relevant in [Appellant's] case because race and sexual preference were not issues in this case. The victim, [Appellant], and all witnesses were African American and there was no evidence regarding anyone's sexual preference. Accordingly, [Appellant's] proffered evidence of unrelated police misconduct was inadmissible and therefore not material under *Brady*.

PCRA Court Opinion, 5-8.

It is because there was no connection established between the alleged misconduct and the officers' involvement in the investigation in this case or

- 9 -

the performance of their duties that it is not material.[2] Appellant appears to argue that he would have been entitled to cross-examine both officers as to their racial or sexual orientation bias with their past statements in order to question the integrity of the investigation. Appellant's Brief, 15. The decision on which he relies does not stand for such a broad proposition. Rather, the United States Supreme Court held that an officer's subjective reasons for a traffic stop would not invalidate the stop where it is supported by objective factors. **Whren v. United States**, 517 U.S. 806, 813 (1996). In so ruling, the Court also noted that:

> …the Constitution prohibits selective enforcement of the law based on considerations such as race. But the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment.

*Id.* This is a direction by the United States Supreme Court to how a claim of racial bias in an investigation might be raised, but not permission to turn

---

[2] None of the alleged misconduct by Officer Seigafuse – his postings on social media – appear to be directed to the public. Rather, all appear to be intended as sarcastic comments directed to or at fellow officers. Some of the postings appear to reference commonly heard criticisms of officers, while only two evidence a bias against the public at large by criticizing the Occupy Wall Street demonstrators and persons on the Wildwood, New Jersey boardwalk. Amended Petition, Ex. E; Trial Court Record, 362. Only the second of these contained a negative racial reference linking boisterous and/or rude behavior to residing in North Philadelphia. As for the letter written by Detective Crone posted within the confines of the Homicide Unit in the Police Department and directed at other members of the unit, it is a caustic and perhaps racially charged letter to other members of his unit to clean up after eating at a workstation. Amended Petition, Ex. F; Trial Court Record, 364. Without more, we discern this letter to be a single incident of over-the-top office discord.

cross-examination into a free-for-all attack on police officers and their past injudicious but non-judicial statements.[3]

The PCRA court also ruled that "even if such evidence were admissible at trial and impeached the credibility of Officer Seigafuse and Detective Crone," PCRA Court Opinion, 8, Appellant would not have been entitled to relief on his **Brady** claim, because:

> … there is not a reasonable probability that the result of the trial would be different. First, Officer Seigafuse's testimony was corroborated by other sources. While Officer Seigafuse saw defendant wearing the hat found at the scene of the murder, Officer Andrew Haenchen, the first officer on the scene, testified that he observed the hat at the scene as well. N.T. 10/31/17 at 91, 96-97, 101 -02, 115. The photos [Appellant] posted on social media, which showed him wearing the hat in the hours and days leading up to the murder, were admitted into evidence and published for the jury. N.T. 10/31/17 at 124-27; Commonwealth Exhibit 30 & 31 (Photos of Defendant in Hat). Furthermore, a DNA analysis showing that [Appellant] was the source of "the major DNA component" detected on the hat was admitted into evidence. N.T. 11/3/17 at 95; Commonwealth Exhibit 44 (DNA Analysis). Kevin Rideout also gave a statement to police, which was admitted at trial, in which he stated that he remembered [Appellant] wearing a distinctive hat on the day of the murder. N.T. 11/1/17 at 52-54. Rideout signed a photo of [Appellant] in the hat confirming that it was defendant. N.T. 11/1/17 at 54-55. Additionally, Roger Pickens testified that, hours after the murder, [Appellant] told him that he had made a mistake by leaving his hat at the scene. N.T. 11/2/17 at 54-55.

---

[3] We note that the proffered postings by the officers could not be used to attack their character for truthfulness as, without more, they are extrinsic evidence of collateral misconduct. Pa.R.E. 608(b)(1); **Commonwealth v. Sanchez**, 848 A.2d 977, 984 (Pa. Super. 2004).

As to Detective Crone, it is true that he was the assigned detective for the homicide here at issue. N.T. 11/3/17 at 34-35. However, he was not a critical witness at trial. He testified that on the night of the murder, he remained at the homicide unit. N.T. 11/3/17 at 37-38. He testified that Officer Seigafuse alerted him to the hat and the social media photos of [Appellant] in the hat. N.T. 11/3/17 at 39-40. Detective Crone also testified that he interviewed Kevin Rideout, Lamont Thompson, and Roger Pickens. N.T. 11/3/17 at 41-47, 64-65. While both Rideout and Thompson recanted their police statements, they both gave videotaped statements, which were played for the jury. N.T. 10/31/17 at 232-33; N.T. 11/1/17 at 63-65; Commonwealth Exhibit 33- B (Video Statement of Rideout); Commonwealth Exhibit 36-B (Video Statement of Thompson). Furthermore, both Thompson and Rideout were interviewed in the presence of other detectives. Thompson was interviewed by Detective Crone and Detective Hammond, and Rideout was interviewed by Detective Crone and Detective Kane. N.T. 11/2/17 at 172; N.T. 11/3/17 at 43, 64; Commonwealth Exhibit 36-A (Statement of Thompson); Commonwealth Exhibit 33-A (Statement of Rideout). [Appellant] proffered no evidence showing misconduct by detectives Kane or Hammond.

Thus, [Appellant] proffered inadmissible evidence of police misconduct unrelated to his case, which would not be likely to change the result of the trial. Accordingly, [Appellant's] **Brady** claim is without merit.

PCRA Court Opinion, 8-9. The PCRA court accurately applied the law, and we discern no error. **See Commonwealth v. Willis**, 46 A.3d 648, 656 (Pa. 2012) ("evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different") (internal quotation marks omitted). Nor has Appellant directly challenged on appeal this alternative basis for the PCRA court's ruling.

In his second claim on appeal, Appellant argues that trial counsel provided constitutionally ineffective assistance for not "fully objecting to the

- 12 -

hearsay testimony of Roger Pickens." Appellant's Brief, 16. He also asserts that the "same attorney was ineffective for failing to raise the hearsay admissibility issue on direct appeal." Appellant's Brief, 23. To the extent that trial counsel failed to "fully object" to the hearsay testimony of Pickens, that failure could not have been raised on direct appeal. ***Commonwealth v. Holmes***, 79 A.3d 562, 576 (Pa. 2013) ("we reaffirm ***Grant*** and hold that, absent the circumstances we address below, claims of ineffective assistance of counsel are to be deferred to PCRA review; … and such claims should not be reviewed upon direct appeal"). Accordingly, we will address only the allegation of ineffective assistance of trial counsel.

To obtain relief on a claim of ineffectiveness, a PCRA petitioner must satisfy the performance and prejudice test set forth in ***Strickland v. Washington***, 466 U.S. 668, 687 (1984). "In Pennsylvania, we have applied the ***Strickland*** test by looking to three elements: the petitioner must establish that: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different." ***Commonwealth v. Robinson***, 82 A.3d 998, 1005 (Pa. 2013) (citing ***Commonwealth v. Pierce***, 527 A.2d 973, 975 (Pa. 1987)). The Sixth Amendment right to counsel is recognized "not for its own sake," but because of the effect it has on the accused's right to a fair trial.

*See Lockhart v. Fretwell*, 506 U.S. 364, 369, (1993); *see also Robinson*, 82 A.3d at 1005.

> With regard to the second prong (reasonable basis), "we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." *Commonwealth v. Hanible*, 30 A.3d 426, 439 (Pa. 2011). We will hold that counsel's strategy lacked a reasonable basis only if the petitioner proves that a foregone alternative "offered a potential for success substantially greater than the course actually pursued." *Spotz*, 18 A.3d at 260. Our review of counsel's performance "must be highly deferential." *Commonwealth v. Tharp*, … 101 A.3d 736, 772 (Pa. 2014) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). To establish the third element (prejudice), the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. [*Hanible*, 30 A.3d at 439]*.*

*Brown*, 196 A.3d at 150–51 (internal citations edited for clarity). A failure to satisfy any of the three prongs is fatal to a claim of counsel's ineffective assistance. *Id.* at 151; *Commonwealth v. Midgley*, 289 A.3d 1111, 1119 (Pa. Super. 2023).

Appellant alleges that trial counsel failed to adequately protect his rights by not "fully objecting" to hearsay statements in Pickens' trial testimony reporting what other witnesses at trial had said to him. Under the rules of evidence, hearsay is a statement by a declarant "not made while testifying at the current trial or hearing" and which "a party offers in evidence to prove the truth of the matter asserted." Pa.R.E. 801. A prior inconsistent statement made by a witness at trial is admissible "to impeach the witness's credibility." Pa.R.E. 613(a). As such, it is not offered to prove the matter asserted but to

undermine the credibility of testimony given by the witness. ***Commonwealth v. Carmody***, 799 A.2d 143, 148 (Pa. Super. 2002).[4] In contrast, a statement made by a party opponent – in a criminal case a statement by the accused on trial – is hearsay, but is admissible as substantive evidence under an exception to the rule against hearsay. Pa.R.E. 803(25)(A).

We have reviewed the record provided by Appellant in the amended petition. We agree with the PCRA court that the complained of statements were admissible at trial, as follows:

> Roger Pickens testified to out-of-court statements made by Lamont Thompson, Kevin Rideout, and [Appellant]. Statement of Errors ¶ 2 (referencing Amended Petition at pp. 9-12). Each declarant is addressed below.
>
> … Thompson gave a statement to police in which he stated that he saw [Appellant] arguing with the decedent, Aaron Walker, and then saw [Appellant] pull out a gun and shoot Walker. N.T. 10/31/2017 at 211-223. At trial, however, Thompson denied making the statement, and claimed that he was not even in the neighborhood on the night of the shooting. ***Id.*** at 188-89, 193-197, 240. In order to impeach Thompson's trial testimony, the Commonwealth elicited from Pickens that Thompson had told him

---

[4] As this Court wrote:

> Our courts long have permitted non-party witnesses to be cross-examined on prior statements they have made when those statements contradict their in-court testimony. Such statements, known as prior inconsistent statements, are admissible for impeachment purposes. ***Commonwealth v. Brady***, 510 Pa. 123, 507 A.2d 66, 68 (1986); P[a].R.E. 613(a).

***Carmody***, 799 A.2d at 148. ***See McManamon v. Washko***, 906 A.2d 1259, 1268 (Pa. Super. 2006) ("A party may impeach the credibility of an adverse witness by introducing evidence that the witness has made one or more statements inconsistent with his trial testimony").

that "somebody just got shot around the corner, and it looked like [Appellant] … did it." N.T. 11/2/17 at 53-54. Furthermore, Pickens stated that Thompson told him that [Appellant] dropped his hat. N.T. 11/2/17 at 54.

These prior statements made by Thompson to Pickens, which were inconsistent with Thompson's in-court testimony, were admissible to impeach Thompson's in-court testimony and therefore, did not violate the hearsay rule. Moreover, the Court instructed the jury, both immediately after Pickens testified about what Thompson told him and in the Court's final jury charge, not to consider these prior inconsistent statements for their truth, but only for their impeachment value. *See* N.T. 11/2/17 at 53; N.T. 11/6/17 at 118-20. Accordingly, counsel was not ineffective for failing to raise this claim.

… Rideout gave a statement to police in which he identified a red fedora that was found at the scene of the murder as a hat that [Appellant] had been wearing at the dice game prior to the killing. N.T. 11/1/17 at 53. He also told police that [Appellant] was in an argument with the decedent at the time of the shooting, that he heard gunshots, and saw [Appellant] running from the scene. N.T. 11/3/17 at 46. At trial, however, Rideout denied seeing anything on the night of the murder. N.T. 11/1/17 at 11. In order to impeach Rideout's trial testimony, the Commonwealth elicited from Pickens that Rideout had told him that Rideout had told the police that the hat found at the scene of the murder was [Appellant's] hat. N.T. 11/2/17 at 59.

Accordingly, just as with Thompson's statements, Rideout's statements to Perkins were offered solely to impeach Rideout's in-court testimony and therefore, did not violate the hearsay rule. Moreover, as stated above, the Court clearly instructed the jury that these kinds of prior inconsistent statements were not admissible for their truth, but rather only on the issue of the believability of what the witness said in court. N.T. 11/6/17 at 118-20. Accordingly, trial counsel was not ineffective for failing to object.

… Pickens testified that, after the murder, [Appellant] told him that he "fucked up" by dropping his hat near the crime scene. N.T. 11/2/17 at 55. Furthermore, Pickens testified that, before Kevin Rideout was shot, [Appellant] told Pickens that Rideout "had to go" and that [Appellant] knew that Rideout was speaking to investigators. N.T. 11/2/17 at 62. Since these were out-of-court

- 16 -

statements of the [Appellant], they were properly admitted under the exception to the hearsay rule for statements of a party opponent. Any objection would have been frivolous.

PCRA Court Opinion, 12-13. We discern no error in the analysis by the PCRA court.

Appellant argues that Pickens' testimony of the out-of-court statements made by Thompson and Rideout that were inconsistent with their trial testimony was not necessary, because the court had already admitted a prior inconsistent statement against each witness. Appellant's Brief, 23. Appellant conflates a prior inconsistent statement admitted as substantive evidence under Pa.R.E. 803.1(1), which is an exception to the rule against hearsay, with a prior inconsistent statement introduced to impeach the trial testimony of a witness under Pa.R.E. 613(a). Perkins' testimony about what Thompson and Rideout told him was the latter, not the former.

In addition, Appellant asserts that Perkins' testimony was "improper bolstering." This assertion goes unexplained by Appellant, however, and its application is not readily apparent. "[I]mproper bolstering or vouching for witnesses by the Commonwealth occurs in two situations: '(1) When the prosecution places the prestige of the government behind the witness by personal assurances of the witness's veracity; and (2) when the prosecution indicates that information which is not before the jury supports the witness['] testimony.'" *Commonwealth v. Stokes*, 38 A.3d 846, 867 (Pa. Super. 2011) (quoting *Commonwealth v. Hartey*, 621 A.2d 1023, 1026 (Pa. Super. 1993)). Appellant failed to demonstrate that either of these scenarios were

present during Perkins' testimony. Our review of the testimony confirms that the prosecutor did not personally assure the jury that Perkins was credible, nor implied he had additional unpresented information to support Perkins' testimony.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/09/2024